FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

2010 AUG -5 P 4: 49

TYSINGER MOTOR COMPANY, INC.,
d/b/a Tysinger Dodge,

    Plaintiff,

v.                                            Civil Action No. 3:10CV554

CHRYSLER GROUP, LLC,

    Defendant.

## MOTION TO VACATE ARBITRATION AWARD
## PURSUANT TO 9 U.S.C. § 10 AND MEMORANDUM IN SUPPORT THEREOF

Plaintiff, Tysinger Motor Company, Inc., d/b/a Tysinger Dodge, ("Tysinger"), by counsel, and pursuant to the Federal Arbitration Act ("FAA"), submits this Motion to Vacate the Arbitration Award in favor of Chrysler Group, LLC ("Chrysler") rendered in *Tysinger Motor Company, Inc. v. Chrysler Group, LLC*, AAA Case No. 16-532-000089-10, stating as follows:

### Summary of Matter

This case involves an arbitration administered by the American Arbitration Association ("AAA") in which the AAA declined to remove the arbitrator, and he did not recuse himself, despite a clear conflict of interest. That ruling deprives Tysinger of a successful dealership franchise, which it operated for nearly 77 years, and effectively transfers that franchise to a competing dealership, Pomoco Hampton Chrysler Jeep of Hampton ("Pomoco Hampton"). The arbitrator, Roderick Mathews, Esquire, ("Arbitrator"), has an economic conflict of interest and personal bias in favor of Pomoco Hampton because he has a right to profits gained from a significant project owned by Cypress Creek Development Company, LLC ("Cypress Creek"). Cypress Creek is owned by Pomoco Developments, Inc. ("Pomoco Developments"), a subsidiary

of Pomoco Hampton, and by Dois I. Rosser Jr., the founder of Pomoco Hampton. Further, Cypress Creek is managed by Steven Adams, who is also the Vice-President and Secretary-Treasurer of Pomoco Hampton, the Vice-President and Secretary-Treasurer of the Pomoco Group Inc. ("Pomoco Group"), and President of Pomoco Developments. Mr. Adams was a key witness at the arbitration for Chrysler over Tysinger's objection, thereby creating a situation in which the Arbitrator had to evaluate the testimony of the Manager of the project in which the Arbitrator has a financial interest. Moreover, Mr. Adam's testimony was contradicted by Tysinger's expert witness, so that the Arbitrator had to judge the credibility and persuasiveness of the man managing the project from which the Arbitrator derives significant income. By ruling in favor of Chrysler, and helping Pomoco Hampton eliminate competition from its area, the Arbitrator helped promote the interests of Mr. Adams and other Pomoco principals, who were his business associates in the Cypress Creek project. Had he ruled against Chrysler, the Arbitrator would have ruled against the financial interest of the Manager of the company in which he had a direct financial interest.

Tysinger commences this action under the FAA seeking equitable and declaratory relief to protect the integrity of the arbitral process, which was tainted in this case because of the Arbitrator's conflict of interest.

Given the arbitration award in favor of Chrysler, Chrysler has formally offered to, and may at any time engage, Pomoco Hampton to be the exclusive dealer of Dodge vehicles in the Hampton geographic area in the place and stead of Tysinger. Such action would harm Tysinger in a manner that is impossible to quantify, and, therefore, warrants a stay order pending the determination of this Motion.

## Parties

1. Moving party, Tysinger Motor Company, Inc., conducts business in Hampton, Virginia, from its primary office located at 2712 Magruder Boulevard, Hampton, Virginia 23666.

2. Adverse party, Chrysler Group, LLC, is a Delaware limited liability company, conducts business throughout the country, and is headquartered at 1000 Chrysler Drive, Auburn Hills, Missouri 48326.

## Subject Matter Jurisdiction

3. There is complete diversity of citizenship among the parties to this action, and the amount or value in controversy, in this case, the right to a dealership franchise, exceeds $75,000.00, exclusive of interest and costs. Therefore, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

4. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the case involves a determination of Tysinger's right, pursuant to the Consolidated Appropriations Act, 2010, Public Law 111-117, § 747, to a fair and impartial arbitration to determine its right to a dealership franchise. Furthermore, because a federal Act gives birth to the right to have this particular arbitration, the arbitration is subject to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, and specifically 9 U.S.C. § 12.

## Venue

5. Venue is proper pursuant to 9 U.S.C. § 10(a), which states that the U.S. District Court wherein an arbitration award was made "may make an order vacating the award upon the application of any party to the arbitration." The arbitration award was made in Richmond, Virginia.

## Facts

6. Tysinger operated a Dodge dealership located at 2712 Magruder Boulevard, Hampton, Virginia 23666 pursuant to a franchise agreement with Chrysler Corporation ("Old Chrysler"). Mark Tysinger is the President of Tysinger and the Dodge franchise was originally awarded to his grandfather in 1933. Three generations of Tysingers have owned and operated the Dodge franchise continually for nearly 77 years.

7. On April 30, 2009, Old Chrysler filed for Chapter 11 bankruptcy.

8. As a result of its bankruptcy filing, Old Chrysler was eliminated and a new company emerged—Chrysler Group, LLC ("Chrysler"). In bankruptcy, Chrysler rejected the dealer agreements of 789 Chrysler dealers, including the dealer agreement with Tysinger.

9. To address the circumvention of state automobile dealer franchise laws and the unjustified closing by Chrysler of numerous financially successful dealerships, such as Tysinger, throughout the country, Congress passed § 747 of Public Law 111-117, titled "Consolidated Appropriations Act, 2010," which allowed dealerships selected for elimination to avail themselves of a binding arbitral process outlined in § 747.

10. When Chrysler selected Tysinger's dealership for elimination, Tysinger availed itself of the aforesaid Act and sought arbitration with AAA to have its dealer agreement reinstated and to be added to the Chrysler dealer network.

11. The arbitration that ensued between Tysinger and Chrysler was styled *Tysinger Motor Company, Inc. v. Chrysler Group, LLC*, and was assigned Case No. 16-532-000089-10. The Arbitrator was selected to preside over the hearing and issue a ruling on Tysinger's request to be reinstated. Pursuant to the scheduling order of the Arbitrator, the parties were to disclose their factual and expert witnesses prior to the hearing.

12. Chrysler served its factual witness disclosure upon the Arbitrator, Tysinger's attorneys, and the AAA representative on June 15, 2010. Chrysler disclosed that it might offer Rick Gallaer, President of the Pomoco Group, the parent company of Pomoco Hampton; William Hayes, President of Pomoco Hampton; Gary Minter, Vice President of the Pomoco Group; Steven Adams, Vice President of the Pomoco Group; among others as witnesses on behalf of Chrysler. The Pomoco witnesses were crucial to Chrysler's case and its efforts to justify giving Tysinger's Dodge franchise (without compensation) to Pomoco Hampton. Tysinger objected to these witnesses being allowed to testify.

13. On June 22, 2010, the Arbitrator advised the parties that he was familiar with Steven Adams, Vice President of the Pomoco Group, and knew that he was also the project manager for a residential real estate project (the "Project") in Surry County, Virginia, known as "Cypress Creek," that the Arbitrator's father-in-law once had an interest in the development, and that interest had been assigned to the Arbitrator and his wife. On information and belief, the Arbitrator's interest is 11% of the profits.

14. As noted above, upon information and belief, Cypress Creek is owned in part by Pomoco Developments, which is a subsidiary of Pomoco Hampton. The business address for Pomoco Developments, Pomoco Group, and Cypress Creek is the same address as the Pomoco Hampton dealership. Steven Adams serves as the registered agent for Cypress Creek, Pomoco Developments and Pomoco Group. Dois I. Rosser, Jr., was the founder and the Chairman of the Pomoco Group, and owns 99% of Cypress Creek. Pomoco Group is a holding company that owns the five separate Pomoco dealerships, including the Pomoco Hampton dealership which was the direct beneficiary of the Arbitrator's decision. All 4 Pomoco witnesses identified by Chrysler in its fact witness disclosure are principals of the Pomoco Group and, thus, in business with Project Manager Adams.

15. The Arbitrator acquired his 11% interest in the profits and/or development of Cypress Creek from his father-in-law, Max C. Kurbjun, ("Kurbjun"), who was hired by and worked for the Pomoco principals on the Cypress Creek Project as a manager since approximately the 1980s. In return for Krubjun serving as a manager for the Project to Pomoco Development and/or Dois Rosser, he was given an interest (upon information and belief, of 11% of the profits) in the development deal.

16. Upon information and belief, Cypress Creek is a significant project and as such has the potential to distribute substantial profits.

17. Chrysler's attorneys acknowledged that "each of the four representatives of Pomoco Group has a vested interest" in the outcome of the arbitration. Yet, Chrysler's attorneys vigorously defended the Arbitrator and insisted that he continue to serve as the Arbitrator for the Tysinger matter. As noted previously, Chrysler terminated Tysinger's Dodge franchise and has issued a letter of intent to Pomoco Hampton evidencing its intent to give that Dodge franchise to Pomoco Hampton. The Arbitrator's interest in the Cypress Creek development was ongoing at the time of the arbitration hearing and, upon information and belief, continues.

18. Adams was expected to testify and did testify, *inter alia*, in support of Chrysler's contention that its best interests were served by eliminating Tysinger's dealership and gifting it to Pomoco Hampton. Tysinger's objection to Adams testimony was overruled by the Arbitrator.

19. The primary beneficiary dealership of the Arbitrator's ruling in favor of Chrysler is Pomoco Hampton, which will gain the franchise rights that were taken from Tysinger in Chrysler's bankruptcy.

20. Similarly, Pomoco Group, as the parent company of Pomoco Hampton, benefited from the ruling in favor of Chrysler in the arbitration.

21. Similarly, Adams, who is a principal in the Pomoco Group, benefited from the ruling in favor of Chrysler in the arbitration.

22. The Pomoco principals have significant influence and/or control over the development and/or sale of the Project, including the ability to influence, *inter alia*, the amount of profits arising from the Project, and when those profits might be realized—decisions that directly affect the Arbitrator financially.

23. Adams, as Project Manager of the Cypress Creek development, has significant influence and/or control over the development and/or sale of the Project, including the ability to influence, *inter alia*, the amount of profits arising from the Project, and when those profits might be realized—again decisions directly affecting the Arbitrator financially.

24. The Arbitrator recognized that Chrysler intended to give the Dodge franchise to Pomoco if Tysinger did not prevail in the arbitration and further ruled, over Tysinger's objection, that the testimony of the Pomoco principals, including the testimony of his business associate Steve Adams, was relevant to the arbitration.

25. Despite Tysinger's objection to the service of the aforesaid Arbitrator, AAA reaffirmed his service on June 25, 2010.

26. The arbitration hearing was held in the City of Richmond on June 29th and 30th, 2010. Tysinger again voiced its objection to the service of the Arbitrator. The Arbitrator issued his ruling on July 22, 2010, finding that Tysinger failed to sustain its burden of proof (the Arbitrator had previously ruled against Tysinger as to which party had the burden of proof) and, therefore, denying its request to be added to Chysler's Dodge dealers network. The arbitrator's award had the effect of awarding Tysinger's Dodge franchise to what amounts to his business partner, Pomoco (and its various holding companies).

## The Arbitration Award Should Be Vacated Pursuant to 9 U.S.C. § 10(a)(2)

27. Under the Federal Arbitration Act, this Court may make an order vacating an arbitration award "where there was evident partiality or corruption in the arbitrators, or either of them." 9 U.S.C. § 10(a)(2). An impartial decision maker is an essential element of due process. *Bowens v. N.C. Dep't of Human Resources*, 710 F.2d 1015, 1020 (4th Cir., 1983).

28. To prevail under this section, Tysinger "must demonstrate 'that a reasonable person would have to conclude that an arbitrator was partial to the other party to the arbitration.'" *ANR Coal Co, Inc. v. Cogentrix of NC*, 173 F.3d 493, 500 (4th Cir., 1999) (citing *Consolidation Coal Co. v. Local 1643, United Mine Workers of America*, 48 F.3d 125, 128 (4th Cir., 1995)).[1]

29. As stated herein, the facts demonstrate that there was evident partiality on the part of the Arbitrator, such that AAA should have required another arbitrator to be appointed. Furthermore, the facts of this case weigh in favor of such a finding under the factors laid out for the Court to consider in Motions brought pursuant to 9 U.S.C. § 10(a)(2), as described in *ANR Coal Co, Inc.*, 173 F.3d, at 500, including:

   a. "[T]he extent and character of the personal interest, pecuniary or otherwise, of the arbitrator in the proceeding." *Id.*, at 500. Upon information and belief, the Arbitrator's personal interest of 11% of the profits of Cypress Creek amount to a substantial monetary value—a value that could vary at the discretion of the Pomoco principals who benefited the most from the arbitration award.

   b. "[T]he directness of the relationship between the arbitrator and the party he is alleged to favor." *Id.* The Arbitrator here had a direct business and financial interest in Cypress Creek, which he shared with an individual and companies

---

[1] *ANR Coal Co., Inc.* has been cited over 100 times in ten Circuits, including most recently in the Fourth Circuit, on precisely the standards applied here, in *Three S Del., Inc. v. DataQuick Info. Sys.*, 492 F.3d 520, 530 (4th Cir., 2007).

affiliated with an entity that stood to reap huge financial gains should the Arbitrator rule against Tysinger.

    c. "[T]he connection of that relationship to the arbitration." *Id.* Pomoco Hampton was acknowledged by all parties to the arbitration, and the Arbitrator himself, to be the primary beneficiary of a ruling in favor of Chrysler. Thus, the Arbitrator was fully aware of the direct connection of his business associate's entities to the subject of the arbitration.

    d. "[T]he proximity in time between the relationship and the arbitration proceeding." *Id.* The conflict-creating relationship existed before, during, and after the arbitration—continuing to the issuance of the arbitration award and beyond.

30. All of these factors weigh in favor of vacating the award.

31. "A party need not prove that the arbitrator, in fact, had improper motives. To do so would make the standard for evident partiality equivalent to proving actual bias." *Id.*, at 500–501.

32. The Arbitrator should have recused himself from the proceedings and the AAA should have named another, unbiased arbitrator in his place because of the objective facts which "demonstrate such a degree of partiality that a reasonable person could assume that the arbitrator had improper motives." *Id.*, at 501.

33. In effect, the Arbitrator was placed in a position where he had the power to greatly benefit, or greatly harm an entity whose principals he was dependent upon for receiving a substantial share of profits from Cypress Creek. One sitting in judgment upon an issue can hardly be impartial in the decision making process under such circumstances, especially where they include judging for credibility the testimony of a business associate.

34. Upon information and belief, Chrysler has provided Pomoco Hampton with a letter of intent in furtherance of its decision to award a Dodge franchise to Pomoco Hampton. Tysinger would be irrevocably harmed if Chrysler is allowed to proceed further while this proceeding is pending in its efforts to implement its decision to award Tysinger's Dodge franchise to Pomoco Hampton.

WHEREFORE, Tysinger moves this Honorable Court to grant it the following relief:

  e. An order staying the effect of the arbitration award in *Tysinger Motor Company, Inc. v. Chrysler Group, LLC*, AAA Case No. 33-532-0089-10 pending the outcome of this motion, a sketch of which is filed herewith pursuant to 9 U.S.C. § 12;

  f. A *Nunc Pro Tunc* order disqualifying the arbitrator for partiality, vacating the previous award by the Arbitrator, and demanding that a new, impartial arbitrator be assigned to the matter, and directing a new hearing before an impartial arbitrator; and,

  g. Such other and further relief as may be provided at law and equity.

Tysinger respectfully requests this Court to set this Motion for a hearing at the Court's earliest convenience.

TYSINGER MOTOR COMPANY, INC.,
d/b/a Tysinger Dodge,

By [signature]
Of Counsel

Wyatt B. Durrette, Jr., Esquire (VSB No. 04719)
J. Buckley Warden IV, Esquire (VSB No. 79183)
Christine A. Williams, Esquire (VSB No. 47074)
DurretteBradshaw PLC
1111 East Main Street, 16th Floor
Richmond, Virginia 23219
Telephone:    (804) 775-6900
Facsimile:    (804) 775-6911
wdurrette@durrettebradshaw.com
bwarden@durrettebradshaw.com
cwilliams@durrettebradshaw.com