IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| TYSINGER MOTOR COMPANY, INC.,<br>d/b/a Tysinger Dodge,<br><br>       Plaintiff,<br><br>v.<br><br>CHRYSLER GROUP, LLC,<br><br>       Defendant. | Civil Action No. 3:10-cv-00554-RLW |

**TYSINGER MOTOR COMPANY, INC.'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO STAY ENFORCEMENT OF AN ARBITRATION AWARD
PENDING A FULL ADJUDICATION ON THE MERITS**

Tysinger Motor Company, Inc. ("Tysinger") filed a Motion to Vacate Arbitration Award Pursuant to 9 U.S.C. § 10 (the "Motion"). In the Motion, Tysinger requested that, in addition to vacating the subject arbitration and ordering a new arbitration before a neutral arbitrator, the Court stay enforcement of the subject arbitration ruling pending the outcome of this proceeding. The stay pending the full adjudication of the Motion is warranted under 9 U.S.C. § 12. This memorandum more fully sets forth Tysinger's entitlement to the requested stay.

## I.    Summary

The essence of the underlying dispute is the evident partiality of the arbitrator who ruled that Tysinger could not reacquire the Dodge franchise it owned prior to rejection of its franchise agreement as part of Chrysler Corporation's ("Chrysler") bankruptcy proceedings. In so ruling, the arbitrator knowingly benefitted the principals of a business enterprise associated with a

project in which the arbitrator had a significant financial interest. Specifically, the arbitrator owns an 11% interest in the profits from a real estate development, Cypress Creek, LLC ("Cypress Creek"). Cypress Creek is owned by a company called Pomoco Developments, Inc. ("Pomoco Developments") and Dois I. Rosser, the founder of the entity which will acquire Tysinger's former Dodge franchise, Pomoco Chrysler Jeep of Hampton, Inc. ("Pomoco Hampton"). Pomoco Developments is a subsidiary of that same entity. Mr. Rosser also owns Tysinger's largest Dodge competitor in the area.

At least one of the individuals who operate and manage Cypress Creek is also one of the individuals who operate and manage Pomoco Hampton, the business that will acquire Tysinger's former Dodge franchise. Further evidence of the arbitrator's partiality is that this individual was a key witness for Chrysler Group, LLC ("Chrysler Group") (the successor to Chrysler) at the arbitration hearing, which argued against Tysinger reacquiring the Dodge dealership. Tysinger objected to this witness being allowed to testify at all and then offered expert testimony that contradicted the testimony of this witness. Thus, the arbitrator had to judge the weight to give to testimony offered by his business associate versus that of a stranger. This blatant conflict-of-interest should have caused the arbitrator to recuse himself. However, the arbitrator did not recuse himself and the American Arbitration Association ("AAA") refused to disqualify him after Tysinger objected to him continuing as the arbitrator in its case. Accordingly, the arbitrator was allowed to continue in the case, which enabled him to rule that Tysinger could not reacquire its franchise.

Pursuant to the Federal Arbitration Act ("FAA"), Tysinger properly invoked its right to vacate the arbitration ruling which was the result of the arbitrator's evident partiality. However, Tysinger has learned that Chrysler Group has taken at least the initial steps to award Tysinger's

former Dodge franchise to Pomoco Hampton. Additionally, Tysinger has learned that additional

steps, which will enable Pomoco Hampton to begin selling Dodge vehicles, may be imminent.

As will be discussed below, such action may make it difficult if not impossible for a subsequent

arbitration or court action to make Tysinger whole. Accordingly, a temporary stay of the

arbitration award while this Court determines the parties' rights is appropriate under the FAA

and the circumstances.

## II.    Facts

A.    Tysinger's 77 years as a Dodge franchisee and the termination of that relationship in the
       Chrysler bankruptcy.

Since 1933 three generations of the Tysinger family have operated a Dodge dealership in

Hampton, Virginia. Affidavit of Mark Tysinger ("Tysinger Aff.") attached hereto as Exhibit A,

¶ 2. Tysinger operated this franchise under a franchise agreement with Chrysler. The franchise

agreement gave Tysinger an exclusive right to operate a Dodge dealership within a certain

market area. Tysinger Aff. ¶ 2. Pursuant to Virginia law, Chrysler was not permitted to award a

Dodge franchise to another company in that area. Virginia Code § 46.2-1569. The franchise

agreement was profitable to both Tysinger and Chrysler. Tysinger enjoyed the exclusivity that

came with the franchise and Chrysler enjoyed the routine profits generated by sales from

Tysinger. Tysinger Aff. ¶ 2.

On April 30, 2009, Chrysler filed a petition under Chapter 11 of the Bankruptcy Code. In

connection with that bankruptcy, Chrysler rejected hundreds of franchise agreements, including

Tysinger's. Tysinger Aff. ¶ 3. As part of its emergence from bankruptcy, a new successor entity

was formed, Chrysler Group.

B.     Tysinger's exercise of the congressional remedy to recover its franchise.

Subsequent to Chrysler's rejection of the franchise agreements in bankruptcy, Congress recognized that many of the rejections were unjustified and shortsighted. 155 Cong. Rec. H14477 (daily ed. Dec. 10, 2009) (statement of Rep. Van Hollen). As a result, Congress created a remedy whereby aggrieved former franchisees could seek a review of the rejection before an impartial arbitrator. The arbitration was to be done before an arbitrator of the AAA and was to be initiated and completed along an expeditious schedule. The arbitrator, after consideration of certain enumerated factors as well as any other relevant evidence, could, at the least, order that the claimant be added to the Chrysler Group dealer network. Appropriations Act, 2010, Public Law-111-117, § 747 ("§ 747"). Tysinger availed itself of this congressional remedy.

The arbitration that ensued between Tysinger and Chrysler Group was styled *Tysinger Motor Company, Inc. v. Chrysler Group, LLC* and was assigned Case No. 33-532-0089-10. The arbitrator, Roderick Mathews, was selected to preside over the hearing scheduled for June 28 and 29 and to issue a ruling on Tysinger's request to be reinstated. Pursuant to the scheduling order of the arbitrator, the parties were to disclose their factual and expert witnesses prior to the hearing. Tysinger Aff. ¶ 4.

Chrysler Group served its factual witness disclosure upon the Arbitrator, Tysinger's attorneys, and the AAA representative on June 15, 2010. Chrysler Group disclosed that it might offer Rick Gallaer, President of the Pomoco Group, Inc. ("Pomoco Group"), the parent company of Pomoco Hampton; William Hayes, President of Pomoco Hampton; Gary Minter, Vice President of the Pomoco Group; and Steven Adams, Vice President of both Pomoco Hampton and the Pomoco Group; among others as witnesses on behalf of Chrysler Group. Mr. Adams did

testify at the hearing and was crucial to Chrysler Group's case and its efforts to justify giving Tysinger's former Dodge franchise to Pomoco Hampton. Tysinger Aff. ¶ 4.

C.     The arbitrator's evident partiality.

On June 22, 2010, a week before the scheduled hearing, the arbitrator advised the parties that he was familiar with Steven Adams, Vice President of Pomoco Hampton and Pomoco Group, and knew that he was also the project manager for Cypress Creek. Tysinger Aff. ¶¶ 4 & 5. Tysinger later learned that the arbitrator owned an 11% interest in the profits of Cypress Creek. Tysinger Aff. ¶ 6. An exhibit illustrating the relationship between the arbitrator and Pomoco Hampton is attached hereto as Exhibit B.

Cypress Creek is owned by Pomoco Developments, which is a subsidiary of Pomoco Hampton, the direct beneficiary of the arbitrator's ruling, and Dois I. Rosser, Jr., the founder of the Pomoco Group and its subsidiaries, including Pomoco Hampton. Tysinger Aff. ¶ 7. Pomoco Developments owns 1% of Cypress Creek. The remaining 99% is owned by Mr. Rosser. Tysinger Aff. ¶ 7. Not only is Mr. Rosser the founder of the Pomoco Group, according to the records of the DMV Mr. Rosser is the owner of the dealership known as Pomoco Chrysler Jeep Dodge of Newport News ("Pomoco Dodge"), Tysinger's largest Dodge competitor in the sales territory. Tysinger Aff. ¶ 8.

The business address for Cypress Creek is the same address as the Pomoco Hampton dealership. Steven Adams, the witness who the arbitrator admitted knowing, serves as the registered agent for Cypress Creek and as noted, its current manager. The arbitrator acquired his 11% interest in the profits and/or development of Cypress Creek from his father-in-law, Max C. Kurbjun, who worked on the Cypress Creek Project as a manager off and on since approximately

the 1980s.   In return for Kurbjun serving as a manager for the Project he was given an 11%

stake in the profits of Cypress Creek, which interest was subsequently assigned to the arbitrator

and his wife.  Tysinger Aff. ¶¶ 9 & 10.  What is entirely unclear is how the profits of Cypress

Creek are distributed.  The relative percentage interests of Pomoco Developments and Mr.

Rosser appear meaningless.  Although Mr. Rosser appears to own 99%, Chrysler Group's

disclosure shows that the arbitrator enjoys a substantial interest (11%) in the profits.

Despite the fact that he had a current and ongoing financial interest in a potentially

profitable entity that was affiliated with the direct beneficiary of his ruling and despite the fact

that a key witness, Steve Adams, for Chrysler Group managed this profitable entity, including

possibly the distribution of any resulting profits, the arbitrator allowed this witness to offer

testimony before him, over objection and contest by Tysinger, in support of Chrysler Group's

assertion that it benefitted from the franchise going to Pomoco Hampton.  He then allowed

himself to rule on this issue, a ruling that resulted in Pomoco Hampton getting Tysinger's Dodge

franchise.  Clearly, these facts which show evident partiality should have led the arbitrator to

recuse himself or AAA to remove him.  Because neither of these occurred, Tysinger was

deprived of its right to a fair and impartial arbitration.

D.       Chrysler Group's actions to enforce the arbitration ruling.

Tysinger notified Chrysler Group and Pomoco Hampton of its intention to seek to vacate

the arbitration ruling.  Tysinger Aff. ¶ 11.  Even before the arbitration, Tysinger and Pomoco

Hampton had taken steps to transfer the Dodge franchise.  Tysinger Aff. ¶ 12.  Further, Tysinger

has learned of information that leads it to believe that Chrysler Group may begin shipping Dodge

vehicles to Pomoco Hampton within two weeks.  Tysinger Aff. ¶ 12.  These actions, which will

result in Dodge vehicles being sold at a different location in the same market territory where Tysinger is located, will make it difficult, if not impossible, for Tysinger to recover its losses even if it is successful in recovering its franchise through a subsequent arbitration.  Tysinger Aff. ¶ 13.

### III.   Legal Argument

Although not a proceeding pursuant to Rule 65 of the Federal Rules of Civil Procedure, logic and precedent dictate that the long-standing standards for seeking temporary relief to maintain the *status quo* pending litigation should be considered here.  See Nken v. Holder, 556 U.S. __, 129 S. Ct. 1749 (2009) (applying the same standards for a preliminary injunction to a court's decision to stay the effect of its decision pending appeal).  These factors are 1) likelihood of success on the merits; 2) risk of harm to the moving party if the relief is not granted; 3) risk of harm to the non-moving party if the relief is granted; and 4) public interest.  Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir. 1977); The Real Truth About Obama, Inc. v. Federal Election Commission, 575 F.3d 342 (4th Cir. 2009).  An application of these four commonly applied standards to the facts above clearly warrants this Court staying the enforcement of the arbitration ruling.

A.   Tysinger is likely to be successful in vacating the arbitration award because the arbitrator showed evident partiality.

The Federal Arbitration Act allows a court to vacate an arbitration award upon the application of any party "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them;" 9 U.S.C. § 10.  Discussing the various rules governing the conduct of arbitrators, the United

States Supreme Court established that such rules "rest on the premise that any tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias." Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145, 150 (1968). In setting aside the arbitration the Court held, "we cannot believe that it was the purpose of Congress to authorize litigants to submit their cases and controversies to arbitration boards that might reasonably be thought biased against one litigant and favorable to another." Id. (emphasis added).

The Fourth Circuit in ANR Coal Co, Inc. v. Cogentrix of NC, 173 F.3d 493 (4th Cir. 1999) set forth four factors to consider when determining whether evident impartiality exists: 1) the extent and character of the personal interest, pecuniary or otherwise, of the arbitrator in the proceeding; 2) the directness of the relationship between the arbitrator and the party he is alleged to favor; 3) the connection of that relationship to the arbitration; and 4) the proximity in time between the relationship and the arbitration proceeding. Id. at 500. Although the court in ANR Coal did not find evident partiality on the part of the arbitrator, the court's analysis of the facts there dictates a finding that evident partiality exists in the case at hand.

In ANR Coal, the strongest evidence proffered by the party claiming bias was that the arbitrator's firm had represented the sole customer of the opposing party to the arbitration and that if that party had lost the arbitration, that party would then pass the cost of the loss onto its sole customer, the arbitrator's firm's client. The court noted that there was no evidence that the relationship between the opposing party and its sole customer allowed a pass-through of the loss as claimed, or that such a result would have any effect on the relationship between the arbitrator's firm and the customer to whom such costs would be passed. Under these facts the first three factors in determining evident partiality could not be met. Id. at 500-02.

8

The facts in <u>ANR Coal</u> must be contrasted to those in the case at bar. Here, the arbitrator owned a financial stake in a business enterprise owned by a subsidiary of the direct beneficiary of the arbitrator's ruling (Pomoco Hampton) and the founder of Pomoco Hampton, Mr. Rosser. Tysinger Aff. ¶¶ 6 & 7. Additionally, the 99% owner of this enterprise, Mr. Rosser, is the owner of Tysinger's largest Dodge competitor in the sales territory, Pomoco Dodge. Tysinger Aff. ¶ 8. This extensive personal and pecuniary interest with the party he is favoring satisfies the first two factors set forth above. Additionally, there is no question that the arbitrator was aware that his ruling in the arbitration would directly benefit Pomoco Hampton, which employed Steve Adams, who also managed the business enterprise in which the arbitrator had a financial stake. Adams offered testimony over Tysinger's objection. Accordingly, the third factor is satisfied as well. Finally, there is no dispute that this interest was ongoing at the time the arbitration occurred. Consequently, all four factors used to determine evident partiality by the Fourth Circuit are present here.

The facts in this case are even more egregious than those in <u>New Regency Productions, Inc. v. Nippon Herald Films, Inc.</u>, 501 F.3d 1101 (9th Cir. 2007), in which an award was vacated because of possible partiality of the arbitrator. The dispute in that case was between a film producer and a film distributor. During the course of the arbitration, the arbitrator accepted employment with a company which was in negotiations to finance a movie for the film producer party. Although the evidence suggested the arbitrator was not aware of the relationship between the arbitrator's new employer and a party in the arbitration, the court called the conflict "real and nontrivial." <u>Id.</u> 1110. Applying standards similar to those set forth in <u>ANR Coal</u>, the court there noted that the subject negotiations were not distant in time from the arbitration. Additionally, the connection between the new employer and the party to the arbitration was not attenuated. <u>Id.</u>

The court held that these facts showed a "reasonable impression of partiality" and were sufficient to warrant vacating the arbitration award. Id. at 1111.

Like the arbitrator in New Regency Productions, the arbitrator in the case at bar had a direct pecuniary interest in profits from a third party closely related to Pomoco Hampton, which stood to benefit from the ruling he made. Equally, and maybe more importantly, a key witness for Chrysler Group, who managed the project from which the arbitrator profited, was employed by the entity owning Pomoco Hampton. Therefore, the facts here show a direct link between the arbitrator and the party he favors because, unlike the arbitrator in New Regency Productions, the arbitrator here was fully aware of the connection between his pecuniary interest and the favored party.

The facts of this case, supported by a verified affidavit, clearly illustrate an evident partiality on the part of the arbitrator, or "a reasonable impression of partiality," Id. Consequently, Tysinger is likely to be successful on the merits of its claim to vacate the arbitration award.

B.     The balance of the risk of harm to the respective parties from an entry or non-entry of a temporary stay favors the court maintaining the *status quo*.

If the Court temporarily stays enforcement of the arbitration award pending a resolution of this dispute, the Court should be satisfied that the risk of harm to Tysinger from not staying enforcement outweighs the potential harm to Chrysler Group from entry of such a stay. Clearly, Tysinger faces real risk to its business that may not be able to be fully remedied even if the Court orders a new arbitration at which Tysinger prevails, if Pomoco Hampton begins selling Dodge vehicles in the interim.

There is a significant risk that an arbitrator in a subsequent arbitration may apply a different analysis to the situation where a dealer has begun selling Dodges in the same market where Tysinger is located. As an initial matter, the arbitrator may attempt to measure the relative benefits of Tysinger and Pomoco Hampton. This would create a standard that § 747 never contemplated.[1] If the arbitrator applied such a standard, Tysinger would be forever barred from exercising the remedy Congress intended. Additionally, it is expected that Pomoco Hampton will soon begin making significant investments to outfit its location to include the Dodge line of vehicles. Indeed, Pomoco Hampton testified at the arbitration that they were prepared to spend up to $1 million on facility improvements if it obtained a Dodge franchise. Tysinger Aff. ¶ 13. Once this investment is complete, an arbitrator at a subsequent arbitration may be reluctant to strip Pomoco Hampton of its Dodge franchise. Even if a new arbitrator believed it was permissible to allow Tysinger and Pomoco Hampton to keep Dodge franchises, the new arbitrator would likely not allow this as the multiplicity of dealers was a key issue in Chrysler's bankruptcy. Tysinger Aff. ¶ 13.

Additionally, if Pomoco Hampton begins selling Dodges an arbitrator may be influenced by Virginia Code § 46.1-1569 which prohibits manufacturers from establishing multiple franchisees in the same market area, an issue which would be confronted if both Pomoco Hampton and Tysinger were selling Dodges in the Hampton market. Because the congressional history of the statute directs arbitrators to consider state law (155 Cong. Rec. 14477 (daily ed. Dec. 10, 2009) (statement of Rep. Van Hollen)), this statute may influence an arbitrator to not add Tysinger into the dealer network. Underlying all of these risks is the fact that an arbitrator

---

[1] § 747(d) specifically directs the arbitrator to balance the interests of the manufacturer and the dealer. It does not permit the arbitrator to consider the interests of competing dealers.

will not be able to award Tysinger money damages as § 747 specifically prohibits such an award. § 747(e).

Finally, if Pomoco Hampton is permitted to begin selling Dodge vehicles before Tysinger gets a fair arbitration, customers may begin associating Pomoco Hampton with the location for purchasing Dodge vehicles. This could put Tysinger at an inappropriate competitive disadvantage. Tysinger Aff. ¶ 14.

The very real harm that Tysinger will experience if Pomoco Hampton begins selling Dodge vehicles must be contrasted with the lack of harm to Chrysler Group if the arbitration ruling is stayed. The metropolitan area is served by other Chrysler Group dealerships which are continuing to sell Dodge vehicles. Clearly, the lack of harm to Chrysler Group from a temporary stay of the arbitration ruling is greatly outweighed by the very real and likely irreparable harm to Tysinger arising from the immediate enforcement of such ruling. Additionally, Tysinger is not seeking discovery and is intent on expediting these proceedings, if Chrysler Group will cooperate.

C.    <u>The public interest is promoted by a stay so that Tysinger has a fair opportunity to exercise its congressionally mandated remedy.</u>

In enacting the remedy that allows former franchisees to seek to reacquire their franchises, Congress recognized that many "profitable and viable" dealers were wrongly terminated in the course of manufacturers' bankruptcies. Accordingly, Congress enacted the arbitration procedure to provide dealers with a "fair and reasonable shot at getting back into business" as Congress saw this as a way to put people back to work and stimulate the economy. 155 Cong. Rec. 14477 (daily ed. Dec. 10, 2009) (statement of Rep. Van Hollen). The evident partiality of the arbitrator prevented Tysinger from exercising this remedy once. If Chrysler

Group begins selling Dodge vehicles through Pomoco Hampton before this Court and an

unbiased arbitrator have an opportunity to make the determinations Congress demanded,

Tysinger may forever be prevented from exercising this remedy.  Such a result would frustrate

the public policy underlying the arbitration remedy implemented by Congress.


## IV.   Conclusion

The evident partiality of the arbitrator prevented Tysinger from exercising its rights under

§ 747.  If the ruling from that tainted arbitration is effectuated before Tysinger has a chance at a

fair arbitration, Tysinger may be permanently prohibited from exercising its rights.  Accordingly,

justice demands that the arbitration ruling be stayed pending a full adjudication by this Court on

the merits of this case.


TYSINGER MOTOR COMPANY, INC.,
d/b/a Tysinger Dodge,


By____/s/ Wyatt B. Durrette, Jr._____
           Counsel


Wyatt B. Durrette, Jr. (VSB No. 04719)
Kevin J. Funk (VSB No. 65465)
DurretteBradshaw PLC
1111 East Main Street, 16th Floor
Richmond, Virginia  23219
Telephone:     (804) 775-6900
Facsimile:      (804) 775-6911
wdurrette@durrettebradshaw.com
kfunk@durrettebradshaw.com

*Counsel for Tysinger*

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that, on August 18, 2010, a true copy of the foregoing was served upon the following via overnight delivery:

Don Bradford Hardin, Jr.
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., N.W.
Washington, D.C. 20006

*Counsel for Chrysler Group*

_____ /s/ Wyatt B. Durrette, Jr._____