**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| Tysinger Motor Company, Inc. d/b/a Tysinger Dodge<br><br>Plaintiff,<br><br>v.<br><br>Chrysler Group, LLC,<br><br>Defendant. | Civil Action No. 3:10-cv-554-RLW |
|---|---|

**CHRYSLER GROUP LLC'S OPPOSITION TO TYSINGER MOTOR COMPANY, INC'S MOTION TO VACATE ARBITRATION AWARD AND PROPOSED ORDER GRANTING STAY OF ARBITRATION AWARD**

The Court should deny the motion of Tysinger Motor Company, Inc. ("Tysinger") to vacate what it describes as an arbitration award in favor of Chrysler Group LLC ("Chrysler") dismissing Tysinger's arbitration demand under Section 747 of H.R. 3288, the Consolidated Appropriations Act of 2010 Pub. L. No. 111117, 123 Stat. 3034, 3186-88 ("Section 747"). As a threshold matter, the statute on which Tysinger relies for relief—the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA")—applies only to voluntary, contractual arbitrations, not ex-post statutorily-mandated arbitrations like the one brought by Tysinger against Chrysler under Section 747. Second, Section 747, the statute under which Tysinger brought the arbitration does not provide a mechanism for vacatur of an arbitration award. Finally, even assuming the FAA applies (which it does not), Tysinger has fallen far short of adducing the proof necessary to establish evident partiality on the part of the arbitrator to overcome both the arbitrator's statement that he could decide the case impartially and the American Arbitration Association's ("AAA") determination that he should proceed to hear the case. Similarly, Tysinger's proposed Order Granting Stay of Arbitration Award fails because neither the FAA (even assuming it

applies) nor any other source of law grants authority to stay the effect of the written determination of a Section 747 arbitrator.[1]

## I. Facts

Tysinger is an automotive dealership in Hampton, Virginia, which formerly sold Dodge brand vehicles pursuant to a sales and service agreement with non-party Chrysler Motors LLC ("Old Chrysler").

On June 9, 2009, as part of the bankruptcy proceeding relating to Old Chrysler,[2] the United States Bankruptcy Court for the Southern District of New York entered an order authorizing Old Chrysler to reject agreements with certain dealers, including Tysinger, in an effort to avoid Old Chrysler's immediate liquidation. Prior to bankruptcy, Old Chrysler had attempted to consolidate its sprawling and inefficient dealership network through a number of voluntary corporate initiatives. The most recent of these was called "Project Genesis," and its aim was to convince dealers to combine operations through voluntary buy-sell agreements so that a smaller number of consolidated dealers would sell the full line of Chrysler, Jeep, and Dodge vehicles from well-located, attractively "branded," and exclusive facilities. The Bankruptcy Court determined that the United States government, which was financing Old Chrysler's operations, and Fiat S.p.A., which was being courted as a buyer, would participate in the Old Chrysler rescue effort only if Old Chrysler first reduced the number of dealers in its sprawling U.S. dealer network and accelerated Project Genesis. *See* Hardin Decl. Ex. A (Rejection Opinion of U.S. Bankruptcy Court). Tysinger was one of approximately 800 dealers

---

[1] Pursuant to the Court's August 19, 2010 Order, Chrysler will address Tysinger's late-filed Memorandum in Support of its Motion to Stay in greater depth in a separate filing on August 23.

[2] Chrysler LLC and certain of its subsidiaries and affiliates, including Chrysler Motors LLC, commenced the bankruptcy proceeding under chapter 11 of the Bankruptcy Code.

which the Bankruptcy Court authorized Old Chrysler to reject. When Chrysler then purchased selected assets from Old Chrysler as part of the bankruptcy, the rejected Tysinger dealer agreement was excluded.

From a legal perspective, Chrysler and Tysinger have been strangers to each other since Chrysler was created out of Old Chrysler's bankruptcy. Chrysler was never a party to a dealer agreement with Tysinger—or any dealer that was not assigned to Chrysler's dealer network—and none of Old Chrysler's rejected dealers, including Tysinger, have sold new Chrysler, Jeep, or Dodge vehicles since approximately June 2009.

On December 16, 2009, as a result of an intensive lobbying effort by certain rejected dealers, Congress enacted Section 747, which required Chrysler[3] to submit to binding arbitration to determine whether certain dealers whose dealership agreements had been rejected as part of the Old Chrysler bankruptcy should be added to Chrysler's dealership network. *See* Hardin Decl. Ex. B (Section 747) at ¶ b.

Section 747 provided as follows:

> A covered dealership that was not lawfully terminated under applicable State law on or before April 29, 2009 [the day before Old Chrysler's bankruptcy filing], shall have the right to seek, through binding arbitration, continuation, or reinstatement of a franchise agreement, or to be added as a franchisee to the dealer network of the covered manufacturer in the geographical area where the covered dealership was located when its franchise agreement was terminated, not assigned, not renewed, or not continued.

Section 747(b).

---

[3] Section 747 also applied to General Motors, which, like Old Chrysler, declared bankruptcy in 2009.

Section 747 defined a "covered manufacturer" to include Chrysler Group; and a "covered dealership" to include dealers whose dealer agreements were rejected by order of the Bankruptcy Court.

Section 747 granted a "covered dealership" 40 days after the enactment of this statute within which to demand arbitration, and required that all cases be submitted to the arbitrator for deliberation within 180 days of the statute's enactment, i.e., by June 14, 2010.[4]

After balancing the economic interests of Chrysler Group, the public at large and the rejected dealer, and considering seven factors enumerated in the statute, the arbitrator was required to decide "whether or not the covered dealership should be added to the dealer network of the covered manufacturer." Section 747(d). The arbitrator was required to issue his or her written determination within 7 business days of submission.

The arbitrator was not vested with any further authority after determining whether or not the covered dealership should be added to the dealer network of the covered manufacturer. The sole and exclusive remedy provided by Congress in the event the arbitrator found in favor of the former dealer was the award of the covered manufacturer's customary and usual letter of intent to enter into a sales and service agreement. Section 747(e).

Section 747 required that all arbitrations be "submitted to the arbitrator for deliberation within 180 days from the enactment of this Act and allowed for 30-day extensions "for good cause." *See* Section 747(d). Thus, all arbitration hearings under Section 747 were to be completed for submission to the arbitrator by July 14, 2010. Section 747 made no provision for

---

[4] Chrysler Group was compelled to arbitrate at the risk of being forced to enter into letters of intent with dealers whose dealer agreements with Old Chrysler had been rejected by the Bankruptcy Court. Chrysler Group never had dealer agreements with any of the "rejected" dealers since such agreements were not assumed by Old Chrysler and assigned to Chrysler Group in connection with the Bankruptcy Court approved sale.

any post-hearing proceedings, including motions to vacate or appeals from the arbitrator's finding.

On January 20, 2010, Tysinger demanded arbitration pursuant to Section 747.

Section 747 provided for the AAA to administer the selection of arbitrators. Section 747(e). Tysinger and Chrysler participated in a confidential arbitrator selection process, through which both parties ranked the arbitrators they preferred and the AAA assigned the arbitrator ranked highest by both parties. On March 8, 2010, the AAA appointed Roderick B. Mathews, Esq. as arbitrator. Mr. Mathews scheduled a two day hearing for June 29 and 30, 2010.

On June 15, 2010, both parties submitted pre-hearing filings, including a list of fact witnesses that each expected to call. Chrysler disclosed, among other potential witnesses, Steven Adams, Vice President of Pomoco Auto Group.

Pomoco Auto Group is the parent company of Pomoco Chrysler Jeep of Hampton ("Pomoco Hampton"), an automotive dealership in Hampton, Virginia, that sells Chrysler and Jeep vehicles pursuant to its sales and service agreements with Chrysler. During its bankruptcy, Old Chrysler, with the Bankruptcy Court's approval, assumed and assigned the Pomoco Hampton dealer agreements to Chrysler in connection with Chrysler's purchase of substantially all of Old Chrysler's assets. Chrysler intended to offer Pomoco Hampton an agreement to sell Dodge vehicles as well as the Chrysler and Jeep vehicles it presently sells in order to achieve a consolidated Project Genesis dealership in Hampton with all three Chrysler brands—Chrysler, Jeep, and Dodge.

On June 22, 2010, after reviewing the parties' fact witness lists, Mr. Mathews informed the AAA that Mr. Adams, disclosed on Chrysler's fact witness list, "is project manger for a residential real estate development in Surry County, Virginia known as 'Cypress Creek' that my

father-in-law Max C. Kurbjun has an ownership interest in that he has assigned to his daughter Karla Kurbjun Mathews, my wife, and to me." Mr. Mathews stated that he was not acquainted with Mr. Adams and that neither he nor his wife was involved in the real estate development beyond the assigned interest. Mr. Mathews stated that he has "no preconceptions about Mr. Adams as a witness and that the business relationship will have no effect whatsoever on [his] capacity to act as a neutral third party arbitrator in this dispute." *Id.*

On June 23, 2010, a mere six days before the scheduled hearing and less than a month before the expiration of Section 747, Tysinger objected to Mr. Mathews' continuing to serve as arbitrator in the dispute and asked the AAA to disqualify him.

On June 24, 2010, Chrysler responded to Tysinger's objection, stating:

> As Chrysler understands Mr. Mathews' email, Mr. Adams is project manager of a real estate development in which Mr. Mathews' father-in-law has an ownership interest. Mr. Mathews is an assignee of that interest. Mr. Mathews has no interest, even contingent, in the Pomoco dealership, only in an unrelated real estate development. These facts do not suggest, let alone establish a conflict of interest.

On June 25, 2010, the AAA informed the parties that "[a]fter careful consideration of the parties' contentions, the Association has determined that Mr. Mathews will be reaffirmed as an arbitrator in the above matter."

On June 26, 2010, Tysinger requested that the AAA reconsider its position.

Beginning on June 29, 2010, Mr. Mathews presided over a two-day hearing. Tysinger had a full and fair opportunity to present its case. Tysinger called four witnesses live, including two experts, and introduced over a thousand pages of documentary evidence, including eight sworn affidavits. Tysinger also cross-examined all four of Chrysler's witnesses.

On July 1, 2010, noting Tysinger's continuing objections to Arbitrator Mathews, the AAA stated that "the Association reaffirmed Arbitrator Mathew[s] in an email on June 25, 2010."

On July 22, 2010, after the parties submitted post-hearing briefs, Mr. Mathews issued a fifteen-page written determination in which he concluded that Tysinger "failed to sustain its burden of proof and its request to be added to Chrysler's Dodge dealers network is denied."[5]

On August 9, 2010, almost a month after the expiration of Section 747 on July 14, 2010, Tysinger served on Chrysler a motion to vacate the arbitrator's determination in reliance on the FAA, which initially was supported only by the one-page Affidavit of Mark L. Tysinger.[6] *See, e.g.*, Tysinger Motion to Vacate Arbitration Award Pursuant to 9 U.S.C. § 10 (hereinafter "Tysinger Mot.") at 8.

## II. Argument

### A. Section 747 Provides No Authority to Appeal or to Vacate a Written Determination

Section 747, which governed the Tysinger-Chrysler arbitration, provides this Court with no jurisdiction to vacate a determination by the Section 747 arbitrator. As stated above,

---

5 Chrysler will provide a complete copy of the arbitrator's written determination upon request of the Court.

6 Although Tysinger styled its papers as a "Motion to Vacate," its motion was docketed as though it was a complaint. Tysinger did not file a complaint. It filed a motion to vacate pursuant to the Federal Arbitration Act, which fails for the reasons explained below. Indeed, even if Tysinger intended to file a *complaint* pursuant to the FAA, it could not have because the FAA "does not permit a party to initiate a challenge to an arbitration award by filing a complaint." *ANR Coal Co., Inc. v. Cogentrix N.C., Inc.*, 173 F.3d 493, 496 n.1 (4th Cir. 1999) (internal quotations omitted); *see also* 9 U.S.C. § 6 ("Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided."). Therefore, the docket should be corrected to reflect that Tysinger has filed a motion to vacate under the FAA.

Insofar as Tysinger's motion to vacate is construed as a complaint under some other cause of action, Chrysler reserves its rights to move to dismiss and/or answer the complaint.

Tysinger's right to demand an arbitration concerning whether it should be added to Chrysler's dealer network derived solely from Section 747. Section 747, however, is deliberately limited in scope. For example, Section 747(e) granted certain rejected dealers, like Tysinger, the right to seek, through binding arbitration, to be added as a franchisee to the Chrysler dealer network in the geographical area where it was located when its franchise was rejected.[7] Section 747 limited relief to a prevailing former dealer to a letter of intent to enter into a sales and service agreement; arbitrators were prohibited from providing any other relief, including damages. The statute's authority for the conduct of arbitrations was short-lived and expired on July 14, 2010—180 days (plus a 30-day extension for good cause) from its enactment.[8] Section 747(d). Finally, and of most relevance to Tysinger's motion, Section 747, unlike the FAA, provides no authority under which a party can appeal a written determination, move to vacate a written determination, or stay the effect of a written determination. *See* Section 747. The arbitrator's decision is binding on the parties as provided expressly in the statute.

Section 747's procedure and relief were circumscribed for good reason. Congress was legislating against the backdrop of the financial collapse and bankruptcy of two iconic American car makers. The legislation was crafted to provide for a rapid—and final—hearing of each rejected dealership's case that would allow the successors of GM and Old Chrysler to put the bankruptcies behind them and rejected dealerships, if they won, the opportunity to be added to

---

7 Section 747(e) also limited discovery to requests for documents specific to the covered dealership.

8 Tysinger's request for "a new hearing" must be denied because Section 747's authority to compel a "covered manufacturer" to arbitrate with "covered dealerships" has expired. The relief Tysinger seeks through its motion to vacate is predicated on the idea that Section 747 is still in force. It is not.

Chrysler's dealer network.[9] By requiring that each and every case be submitted to an arbitrator within only 180 days and requiring the arbitrator to issue a written determination only 7 business days after submission, Congress left no doubt that it was interested in an expeditious and final determination. If Congress had wanted to provide a full-blown trial or vacatur or appeals, it could have done so. It did not. Where, as here, Congress does not provide relief that it clearly knows how to provide, Congress is understood to have deliberately chosen not to provide that relief.[10] For that independent reason, Tysinger's motion to vacate should be denied.

Congress did, however, provide a mechanism for administering the selection of arbitrators. According to Section 747, the AAA, a neutral organization with no interest in the outcome of the arbitration, was charged with administering the selection of arbitrators. *See* Section 747(e) ("The arbitrator shall be selected from the list of qualified arbitrators maintained by the Regional Office of the American Arbitration Association (AAA), in the Region where the dealership is located, by mutual agreement of the covered dealership and covered manufacturer. If agreement cannot be reached on a suitable arbitrator, the parties shall request AAA to select

---

9 The right of prevailing former dealers to be added to Chrysler's dealer network is subject to the prevailing dealer's satisfaction of conditions specified in a letter of intent and the rights of existing Chrysler, Jeep and Dodge dealers under state dealer laws.

10 *See Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 176-77 (1994) (although "Congress knew how to impose aiding and abetting liability when it chose to do so," it did not use the words "aid" and "abet" in the statute, and hence did not impose aiding and abetting liability); *see also Franklin Nat'l Bank v. New York*, 347 U.S. 373, 378 (1954) (finding "no indication that Congress intended to make this phase of national banking subject to local restrictions, as it has done by express language in several other instances"); *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 485 (1996) ("Congress . . . demonstrated in CERCLA that it knew how to provide for the recovery of cleanup costs, and . . . the language used to define the remedies under RCRA does not provide that remedy"); *Dole Food Co. v. Patrickson*, 538 U.S. 468, 476 (2003) (Congress knows how to refer to an "owner" "in other than the formal sense," and did not do so in the Foreign Sovereign Immunities Act's definition of foreign state "instrumentality"); *Whitfield v. United States*, 543 U.S. 209, 216 (2005) (Congress has imposed an explicit overt act requirement in 22 conspiracy statutes, yet has not done so in the provision governing conspiracy to commit money laundering).

the arbitrator.”). Tysinger made the same allegations of arbitrator bias to the AAA that it has made in its motion to this court. *Twice*, the AAA determined to reaffirm Mr. Mathews as arbitrator. “After careful consideration of the parties’ contentions,” the AAA wrote on June 25, “the Association has determined that Mr. Mathews will be reaffirmed as an arbitrator in the above matter.” Tysinger has provided no reason that the AAA’s neutral—and Section 747-endorsed—determination should be disregarded. Tysinger’s motion should be denied and the AAA’s determination should stand.

**B. The Federal Arbitration Act Does Not Apply to Statutorily-Mandated Arbitrations**

Tysinger ignores the provisions of Section 747 and relies exclusively on the FAA to support its request that this Court vacate the Section 747 arbitrator’s written determination. *See*, *e.g.*, Tysinger Mot. at 8. Section 747, however, nowhere provides for the application of the FAA. Moreover, the FAA governs consensual arbitrations pursuant to a written agreement between the parties and does not apply to the unique, mandatory brand of arbitration compelled by Section 747.

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or ***an agreement in writing to submit to arbitration*** an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphases added). In addition, Section 4 states that a proceeding under the FAA “shall be dismissed” if no “agreement in writing for arbitration” exists. *Id.* at §4 (“If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed.”).

Courts have made clear that the FAA only applies to consensual arbitrations, undertaken by written agreement. "Arbitration under the Act is a matter of private contract." *Glass v. Kidder Peabody & Co., Inc.*, 114 F.3d 446, 451 (4th Cir. 1997); *see also EEOC v. Waffle House, Inc.* 534 U.S. 279, 294 (2002) ("Because the FAA is 'at bottom a policy guaranteeing the enforcement of private contractual arrangements,' we look first to whether the parties agreed to arbitrate a dispute."); *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474-75 (1989) ("[T]he FAA does not confer a right to compel arbitration of any dispute at any time; it confers only the right to obtain an order directing that 'arbitration proceed *in the manner provided for in [the parties'] agreement*.'"); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985) ("The legislative history of the Act establishes that the purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate.").

The arbitration between Chrysler and Tysinger took place pursuant to Section 747, a federal statute that compelled Chrysler's participation in binding arbitrations with any of the rejected dealerships that demanded it. Tysinger does not allege (because it cannot) that Chrysler and Tysinger entered into an agreement to submit to the arbitration. Chrysler and Tysinger have never agreed to arbitrate any disputes between them—indeed they have never been a party to a contractual agreement of any kind or, for that matter, ever had a commercial relationship. Where, as here, there is no private contractual arbitration agreement between Tysinger and Chrysler to be enforced, the FAA simply does not apply.

**C. Tysinger Provided No Evidence of Bias**

Even if the FAA were found to apply to compulsory arbitrations (and it does not), Tysinger has not met the "heavy" and "onerous" burden of proving that Mr. Mathews' written determination in Chrysler's favor should be vacated because of his "evident partiality." *See ANR*

*Coal*, 173 F.3d at 501. In order to meet that burden "a party seeking vacatur ***must put forward facts*** that objectively demonstrate such a degree of partiality that a reasonable person could assume that the arbitrator had improper motives. *Id.* (emphasis added); *People's Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141 (4th Cir. 1993) ("It is well established that a mere appearance of bias is insufficient to demonstrate evident partiality.")

Tysinger has failed to establish any partiality, let alone partiality giving rise to improper motives. In the first place, Tysinger presented ***no evidence*** (either in its initial brief or in its untimely Memorandum in Support of its Motion to Stay) that demonstrates Mr. Mathews' alleged "evident partiality" in favor of Chrysler. Tysinger's factual proffer consists entirely of unsupported attorney argument and statements of "information and belief." *See, e.g.,* Tysinger Mot. at ¶¶ 16 ("***Upon information and belief***, Cypress Creek is a significant project and as such has the potential to distribute substantial profits."); 17 ("The Arbitrator's interest in the Cypress Creek development was ongoing at the time of the arbitration and, ***upon information and belief***, continues."); 34 ("***Upon information and belief***, Chrysler has provided Pomoco Hampton with a letter of intent…") (emphases added). Tysinger provides no document in support of these or any of its allegations.[11] In its initial briefing, Tysinger's only piece of purported evidence was the one-page Declaration of Mark L. Tysinger. The only facts recited therein of which Mr. Tysinger has personal knowledge, however, concern the location of Tysinger's principal office and the fact that Mr. Tysinger attended the arbitration. *See* Tysinger Decl. at ¶¶ 2-3. Though Mr. Tysinger claims to have "reviewed the information available regarding the issues surrounding the Arbitrator's ownership interests in Cypress Creek Development and those entities and

---

[11] Because Tysinger's motion is so legally deficient, Chrysler has not specifically addressed each and every one of the factual inaccuracies and unverified statements in Tysinger's motion papers here. Chrysler reserves its rights, however, to contest any inaccurate or incomplete assertions contained in Tysinger's motion to the extent it becomes necessary.

individuals affected by the outcome of the arbitration," Mr. Tysinger neither identifies the information he reviewed nor does he make this information available to the Court for its independent review. Mr. Tysinger's assurances that he has "reviewed the information" and that he can affirm "upon personal knowledge and ***information and belief*** that the facts stated in the Motion to Vacate are true and accurate" is no evidence at all (*see* Tysinger Decl. at ¶¶ 3-4 (emphasis added)) and is certainly not sufficient to meet Tysinger's "onerous" burden of proving "evident partiality."[12] *See ANR Coal*, 173 F.3d at 501; *see also Consolidated Coal Co. v. Local 1643, United Mine Workers of America*, 48 F.3d 125, 129 (4th Cir. 1995) (reversing finding of arbitrator bias where movant "failed to demonstrate any partiality or improper motives on the part of Arbitrator Roberts or that he and his brother had any interest in the outcome of the dispute arbitrated.").

Without any factual bases for the allegations made in its brief, Tysinger is forced to resort to pure attorney argument, which would be insufficient to meet Tysinger's burden under the FAA. Relying solely on attorney argument, Tysinger purports to analyze the relationship between the arbitrator and the arbitration proceeding under the four factors articulated in *ANR*

---

[12] Mr. Tysinger filed a second affidavit on August 18 in support of Tysinger's untimely Memorandum in Support of its Motion to Stay in an apparent attempt to cure the failure to adduce any evidence in support of its allegations here. This second affidavit fares no better. It provides little more than a recitation of Mr. Tysinger's beliefs about Mr. Mathews, Pomoco Hampton, Chrysler's plans, what might influence a hypothetical arbitrator, or what a hypothetical arbitrator would likely allow. *See* Affidavit of Mark Tysinger [Docket No. 7-1] at ¶ 12 (" I learned of information which leads me to believe…"); ¶ 13 ("At a new arbitration the arbitrator may be influenced by Chrysler Group's anticipated argument…"); ¶ 13 ("the new arbitrator would likely not allow…"); ¶ 14 ("customers may begin associating Pomoco Hampton with the location for purchasing Dodge vehicles…"). In short, these are not matters of which Mr. Tysinger has personal knowledge or about which Mr. Tysinger is qualified to attest.

*Coal* to determine whether a claimant has demonstrated evident partiality.[13] Significantly, Tysinger fails to mention in its initial brief the facts or holding of *ANR Coal*, in which the Fourth Circuit refused to vacate an arbitrator's award for evident partiality where the arbitrator failed to disclose connections between his law firm and the prevailing party. *See id.* at 495-96, 499. Even in its late-filed Memorandum in Support of its Motion to Stay, Tysinger still fails to mention *ANR Coal*'s instruction: "When considering each factor, the court should determine whether the asserted bias is 'direct, definite and capable of demonstration rather than remote, uncertain or speculative' and whether the facts are sufficient to indicate 'improper motives on the part of the arbitrator.'" *Id.* at 500. The *ANR Coal* factors plainly show that Tysinger's unsupported allegations, even if true, describe only the most "remote, uncertain or speculative" evidence of bias and do not indicate any "improper motives on the part of the arbitrator." *See id.*

The first factor is "the extent and character of the personal interest, pecuniary or otherwise, of the arbitrator in the proceeding." *ANR Coal*, 173 F.3d at 500. Mr. Mathews has no personal interest in the proceeding. Tysinger points to its "information and belief" that Mr. Mathews has a "personal interest of 11% of the profits of Cypress Creek… a value that could vary at the discretion of the Pomoco principals who benefits the most from the arbitration award" as evidence of Mr. Mathews' "personal interest… in the proceeding." *See* Tysinger Mot. at ¶ 29(a). Tysinger has proffered no evidence (in either its initial brief or its late-filed Memorandum in Support of its Motion to Stay) of Mr. Mathews' purported personal interest in the outcome of the proceeding, no evidence that the value of Mr. Mathews' interest would vary at the discretion

13 The four factors a court should examine to determine whether a claimant has demonstrated evident partiality are: "(1) the extent and character of the personal interest, pecuniary or otherwise, of the arbitrator in the proceeding; (2) the directness of the relationship between the arbitrator and the party he is alleged to favor; (3) the connection of that relationship to the arbitration; and (4) the proximity in time between the relationship and the arbitration proceeding." *ANR Coal*, 173 F.3d at 500.

of the "Pomoco principals;" and no evidence showing that the "Pomoco principals" benefit "the most from the arbitration award." Most importantly, Tysinger fails to explain how Mr. Mathews' alleged interest in a percentage of profits of Cypress Creek—a real estate development owned by non-parties to the arbitration—translates into a "personal interest… in the proceeding" between Tysinger and Chrysler.

The second factor is "the directness of the relationship between the arbitrator and the party he is alleged to favor." *ANR Coal*, 173 F.3d at 500. Mr. Mathews has no relationship (and Tysinger has alleged none) with Chrysler, the party he is alleged to favor. Tysinger alleges that Mr. Mathews' "direct business and financial interest in Cypress Creek" is evidence of "the directness of the relationship between the arbitrator and the party he is alleged to favor." *See* Tysinger Mot. at ¶ 29(b). Cypress Creek was not a party to the arbitration between Tysinger and Chrysler. That fact, alone, is fatal to Tysinger's allegations of bias. In *ANR Coal*, the Fourth Circuit found no evident partiality in part because the arbitrator had no direct connection with the prevailing party. The entity that the arbitrator was alleged to favor "was not a party to the arbitration; [the arbitrator's law firm's] representation of the utility is thus a step removed from the arbitration proceeding."[14] *ANR Coal*, 173 F.3d at 501; *see also U.S. Wrestling Fed'n v. Wrestling Div. of AAU, Inc.*, 605 F.2d 313 (7th Cir. 1979) (holding that an arbitrator's connections with a non-party did not constitute evident partiality even though the non-party had a relationship with a party to the arbitration). Tysinger has alleged no relationship (direct or

[14] Tysinger's reliance in its late-filed Memorandum in Support of its Motion to Stay on the Ninth Circuit case *New Regency Productions, Inc. v. Nippon Herald Films, Inc.* is misplaced. *See* Tysinger Memo. in Support of Mot. to Stay at 9-10. In that case, the Ninth Circuit—which did not apply *ANR Coal*'s four factor test—affirmed vacatur where the arbitrator worked as a senior executive for a firm that was negotiating to finance and produce a major motion picture with a party to the arbitration. *See New Regency*, 501 F.3d 1101, 1107 (9th Cir. 2007). Here, by contrast, Tysinger has not even alleged any relationship between the arbitrator and a party to the arbitration and certainly not the direct relationship described in *New Regency*.

otherwise) between the arbitrator and Chrysler, and there is none.[15] This factor too demonstrates the lack of evident partiality.

The third factor is "the connection of that relationship to the arbitration." *ANR Coal*, 173 F.3d at 500. Tysinger alleges that Mr. Mathews' interest in Cypress Creek is connected to the arbitration between Tysinger and Chrysler because Pomoco is "the primary beneficiary of a ruling in favor of Chrysler." This, too, is unsupported and plainly incorrect. The primary beneficiary of a ruling in favor of Chrysler is Chrysler, a party to the arbitration. Pomoco was not a party. The relationship at issue in this factor is the relationship "between the arbitrator and the ***party*** he is alleged to favor." *Id.* (emphasis added). That connection, as explained above, is non-existent.

Tysinger's argument hinges not on the arbitrator's relationship with a "party he is alleged to favor," but the arbitrator's alleged relationship to a non-party. However, even the alleged connection between Pomoco Hampton, the non-party, and the arbitrator is attenuated. As explained above, Mr. Mathews stated that his father-in-law assigned Mr. Mathews and his wife an interest in a percentage of the profits of Cypress Creek, a real estate development, which is partly owned by a subsidiary of Pomoco Hampton, an automotive dealership to which Chrysler may grant a letter of intent to obtain a Dodge sales and service agreement. Even if Pomoco Hampton were granted a letter of intent (a decision entirely in Chrysler's discretion), Tysinger has not adduced any evidence showing how the grant of a letter of intent to Pomoco Hampton would affect Cypress Creek or inure to the benefit of the arbitrator. Tysinger's unsupported

---

[15] Tysinger's fact-free allegation that Mr. Mathews shared his interest in Cypress Creek "with an individual and companies affiliated with an entity that stood to reap huge financial gains should the Arbitrator rule against Tysinger" (*see* Tysinger Mot. at ¶ 29(b)) is pure attorney argument and is entitled to no weight.

allegations are not the sort of "direct, definite" evidence of bias that Tysinger would need to show to meet its burden under the FAA. *See ANR Coal*, 173 F.3d at 500.

The final factor is "the proximity in time between the relationship and the arbitration proceeding." *Id.* While Mr. Mathews' was allegedly assigned an interest in the profits of Cypress Creek before he presided over the arbitration between Tysinger and Chrysler, any proximity in time between the relationship and the arbitration proceeding is irrelevant because of the lack of evidence that Mr. Mathews' relationship with Cypress Creek is a source of bias.

Tysinger's unsupported allegations are not facts and do not come close to "*objectively* demonstrat[ing] such a degree of partiality that a reasonable person could assume that the arbitrator had improper motives." *Id.* at 501; *see also id.* at 502 ("ANR has not carried its burden of proffering facts that, alone or taken together, would permit a reasonable person to assume that Brewer was partial to Cogentrix."). Consequently, even if the FAA applied, Tysinger's motion should be denied.

**D. Tysinger's Proposed Order Granting Stay of Arbitration Award Should Be Denied**

Tysinger's proposed Order Granting Stay of Arbitration Award should be denied because, even if the FAA did apply (which it does not for the reasons explained above), Section 12 of the FAA—the section under which Tysinger moves—provides no authority to stay the arbitration award.[16]

Contrary to Tysinger's suggestion, Section 12 of the FAA does ***not*** grant broad authority to "stay[] the effect of the arbitration award in *Tysinger Motor Company, Inc. v. Chrysler Group, LLC*, AAA Case No. 33-532-0089-10 pending the outcome of this motion." *See* Tysinger Mot.

[16] Pursuant to this Court's August 19 Order, Chrysler will respond fully to the arguments raised in Tysinger's late-filed Memorandum in Support of Its Motion to Stay Enforcement of an Arbitration Award Pending A Full Adjudication on the Merits in a separate filing on August 23.

at ¶ 34(e). Instead, Section 12 grants only the authority to stay one type of action: "the proceedings of the adverse party to enforce the award." *See* 9 U.S.C. § 12 ("For the purposes of the motion any judge who might make an order to stay the proceedings in an action brought in the same court may make an order, to be served with the notice of motion, staying the proceedings of the adverse party to enforce the award."). Here, Chrysler has not moved to enforce an award in the district court (because Section 747 has no provision for such a motion), so there is no proceeding for the court to stay.

Moreover, to the extent Tysinger seeks through this proposed order to prevent Chrysler from granting Pomoco Hampton a letter of intent to enter into a sales and service agreement to sell Dodge vehicles, it should be denied for the additional reason that Chrysler's ability to freely contract with a non-party dealership did not arise from an award to Chrysler through the Section 747 arbitration. The arbitrator's written determination denied Tysinger's request to be added to Chrysler's dealer network, because Tysinger "failed to sustain its burden of proof." The written determination did not (and Section 747 granted the arbitrator no authority to) award Chrysler the right to issue a letter of intent to Pomoco Hampton or any other dealer. Rather, Chrysler had the right to contract with Pomoco Hampton, or any other dealership, before Section 747 was passed, while it the arbitration was pending, and now that Section 747 has expired. Because Chrysler's granting a letter of intent to Pomoco Hampton was not contingent upon the Section 747 arbitrator's determination, it should not be stayed pending the outcome of Tysinger's unsupported motion to vacate.

## III. Conclusion

For the reasons explained above, Chrysler respectfully requests that the Court deny Tysinger's Motion to Vacate Arbitration Award Pursuant to 9 U.S.C. § 10 and accordingly decline to enter Tysinger's Proposed Order Granting Stay of Arbitration Award.

Dated: August 20, 2010

CHRYSLER GROUP LLC

By its attorneys,

/s______________________________

Bradford Hardin (Va. Bar No. 76812)*
Kevin C. Heffel (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel: (202) 663-6000
Fax: (202) 663-6363
Bradford.hardin@wilmerhale.com
Kevin.heffel@wilmerhale.com
*Admitted in VA only. Supervised by members of the District of Columbia Bar.

Richard A. Johnston (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6021
Fax: (617) 526-5000
Richard.johnston@wilmerhale.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of August 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to the following counsel of record:

Christine A. Williams
Wyatt B. Durrette, Jr.
DurretteBradshaw PLC
600 E Main St
20th Floor
Richmond, VA 23219
(804) 775-6900
cwilliams@durrettebradshaw.com
wdurrette@durrettebradshaw.com

Kevin Jermone Funk
Cantor Arkema PC
1111 E Main St
PO Box 561
Richmond, VA 23218-0561
(804) 644-1400
kfunk@durrettebradshaw.com

/s______________________________
Bradford Hardin (Va. Bar No. 76812)*
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel: (202) 663-6000
Fax: (202) 663-6363
Bradford.hardin@wilmerhale.com
*Admitted in VA only. Supervised by members of the District of Columbia Bar.