IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TYSINGER MOTOR COMPANY, INC., )
d/b/a Tysinger Dodge, )
 )
      Plaintiff, )
 )
v. ) Civil Action No. 3:10-cv-00554-RLW
 )
CHRYSLER GROUP, LLC, )
 )
      Defendant. )

## MEMORANDUM IN SUPPORT OF FEDERAL COURT
## SUBJECT MATTER JURISDICTION

Plaintiff, Tysinger Motor Company, Inc. ("Tysinger"), by counsel, and pursuant to the Court's August 19, 2010 order, states the following in support of Federal Court subject matter jurisdiction:

### Procedural Background

Tysinger initiated this action with the filing if its Motion to Vacate Arbitration Award Pursuant to 9 U.S.C. § 10 (the "Motion"). In the Motion, Tysinger seeks to vacate an arbitration ruling because of the arbitrator's evident partiality, specifically the relationship between the arbitrator and the primary beneficiary of the arbitrator's ruling. In addition to seeking an order vacating the arbitration ruling and ordering a new arbitration before a neutral arbitrator, the Motion seeks a temporary stay of the enforcement of the arbitration ruling pending a determination of the Motion. Tysinger filed a brief in support of its request for a temporary stay on August 18, 2010. On August 19, 2010 the Court issued an order directing the parties to brief

the issue of diversity and federal question jurisdiction, both of which were alleged in the Motion, by August 23, 2010. The Court also directed Chrysler Group, LLC ("Chrysler") to respond to Tysinger's request for a temporary stay by the same date.

## **Subject Matter Jurisdiction**

The Court has subject matter jurisdiction over the controversy raised in the Motion as a result of the federal question raised in the Motion. The Motion necessarily requires the Court to interpret Consolidated Appropriations Act, 2010 Public Law 111-117, § 747 (§ 747) which vested Tysinger, among other automobile vehicle dealers, with the right to seek redress before an arbitrator. To resolve the issues raised in the Motion, the Court must necessarily determine what Congress intended the scope of that right to be – did Congress intend that an arbitrator appointed pursuant to § 747 could exhibit evident partiality without any recourse for the parties? If Congress did intend for such an inequitable result, does this violate the parties' due process rights under the United States Constitution? The answers to these questions are necessary to the resolution of the Motion. Tysinger has concluded, based on documentation provided by Chrysler that the Court does not have diversity jurisdiction as a result of the United State Treasury Department's role as a member of Chrysler.

Federal Question Jurisdiction

28 U.S.C. § 1331 provides that the district court shall have original jurisdiction of all "civil actions arising under the Constitution, laws, or treaties of the United States." Although the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, does not create any independent federal question jurisdiction, a Federal Court may obtain jurisdiction if there is an independent federal

question. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983). The question for a Federal Court in determining whether it has federal question jurisdiction to consider vacating an arbitration award is whether resolution of the vacation request requires consideration of federal law. Med-Tel International Corp. v. Loulakis, 403 F. Supp. 2d 496 (E.D. Va. 2005).

In this case, the arbitration remedy is a creation of a congressional statute, § 747. Tysinger did not arbitrate pursuant to a contract; it arbitrated because Congress mandated it as a condition to reacquiring its franchise. Accordingly, any irregularity with the arbitration remedy, including the bias of the arbitrator, necessarily implicates the interpretation of this federal statute. Resolution of the issues in the Motion will require the Court to address whether Congress intended that the arbitrator be neutral and unbiased and whether § 747 allows a party to an arbitration to seek redress before a court if the arbitrator was indeed biased.

The unique procedure of § 747 presents a very different scenario than the one faced by the court in Med-Tel International. In that case the court held that it lacked federal question jurisdiction because resolution of the motion to vacate, in which the arbitrability of federal claims was raised, did not require the Court to consider the substance of those federal claims. Instead, the arbitrability would be decided by reference to contract law. Thus the question there turned on the source of the arbitration remedy.

In § 747, Congress provided that Tysinger, among other automobile vehicle dealers, could seek redress before an arbitrator on the America Arbitration Association ("AAA") panel. Implicit in the federal recognition of arbitration is that the arbitrator will be unbiased. See Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145, 150 (1968). The logical result of these facts is that the interpretation of § 747, specifically, whether Tysinger

obtained a fair hearing before an unbiased arbitrator as contemplated by § 747, is a question of federal law vesting this Court with subject matter jurisdiction.

In addition to the interpretation of § 747, the Motion could implicate the Constitutionality of the statute as it relates to Tysinger's due process rights. If the Court were to conclude that Congress did not require a neutral arbitrator under § 747 or that Tysinger has no recourse to the courts if an arbitrator is biased (as Chrysler suggests in its response to the Motion), the question becomes whether such a statute violates the United States Constitution's guaranty to due process under the law. This was the question before the Court in Brotherhood of Locomotive Engineers & Trainmen General Committee of Adjustment v. Union Pacific Railroad Co., 522 F.3d 746 (7th Cir. 2008) (aff'd on other grounds, 130 S. Ct. 584 (2009). There, the National Railroad Adjustment Board ("NRAB") acting as an arbitrator dismissed claims before it because there was no evidence of prior attempts to resolve the dispute as required by the Railroad Labor Act. In holding there was no such evidence, the NRAB implemented a new evidentiary rule. In setting aside the arbitrator's ruling, the court held that the new procedures violated the claimant's due process rights which require "the opportunity to be heard at a meaningful time and in a meaningful manner." Id. at 751. Although due process standards are not as stringent in an arbitral forum as in a court, due process still requires that the arbitral forum provide "a fundamentally fair hearing, one that meets the minimal requirements of fairness—adequate notice, a hearing on the evidence and *an impartial decision by the arbitrator*." Id. (emphasis added).

Even without considerations related to due process, it borders on the inconceivable that Congress would provide the right to a AAA arbitrator and not intend that at least the fundamental attributes that make that right meaningful accompany it. The right to an arbitration proceeding

4

with a partial arbitration is not right at all and Congress surely had no such intention, and there is no requirement that the right to an appeal under these circumstances be expressed in the statute. Such an obvious remedy to a biased arbitrator would be understood to accompany the grant of the right. This is what the Court must surely decide and it surely has jurisdiction to do so.

In the unlikely event that the Court were to determine that Congress, in enacting § 747, did not provide Tysinger with the right to a neutral arbitrator or the opportunity to seek redress by the courts, the Court must determine whether such a law violates Tysinger's Constitutional due process requirements. Because § 1331 specifically vests this Court with jurisdiction over civil actions arising under the Constitution, the controversy raised in the Motion falls within this Court's subject matter jurisdiction.

Diversity Jurisdiction

28 U.S.C. § 1332 authorizes jurisdiction in Federal Court where the parties are of diverse citizenship and where the amount in controversy exceeds $75,000. The requirement of diversity has been interpreted to mean that each plaintiff must be diverse from that of each defendant. Caterpillar, Inc. v. Lewis, 519 U.S. 61 (1996). As an unincorporated entity, a limited liability company is assigned the citizenship of each of its members. General Technologies Applications, Inc. v. Exro Ltda., 388 F.3d. 114 (4th Cir. 2004).

On August 20, 2010, counsel for Chrysler provided Tysinger with a list of the members of Chrysler. The members are Fiat North America LLC, United States Department of the Treasury, UAW VEBA Holdcos CH-00 to CH12, and Canada CH Investment Corporation. Because the presence of an agency of the United States Government as a party (or as a member of an unincorporated entity party) destroys diversity of citizenship, diversity jurisdiction may not

be the basis for federal court jurisdiction over a suit involving Chrysler as a party. General Ry. Signal Co. v. Corcoran, 921 F.2d 700 (7th Cir. 1991); see also Gladys McCoy Apts., L.P. v. State Farm, 2010 U.S. Dist. LEXIS 43688 (D. OR. 2010) (holding that the presence of a federally chartered corporation as a member of an LLC party destroys diversity). Even though this apparently means that Chrysler would be subject only to suit in state court for all actions not involving a federal question, such as product liability, breach of contract, etc., Tysinger does not believe there is diversity jurisdiction over the Motion. However, if Chrysler believes otherwise, Tysinger does not object.

## Conclusion

The Motion raises issues relating to the interpretation of a federal statute, § 747, as well the Constitutionality of that statute. Resolution of the Motion requires the Court to answer these questions. Accordingly, the Court has subject matter jurisdiction over the Motion.

TYSINGER MOTOR COMPANY, INC.,
d/b/a Tysinger Dodge,

By \_\_\_\_/s/ Wyatt B. Durrette, Jr._____
Counsel

Wyatt B. Durrette, Jr. (VSB No. 04719)
Kevin J. Funk (VSB No. 65465)
DurretteBradshaw PLC
1111 East Main Street, 16th Floor
Richmond, Virginia 23219
Telephone: (804) 775-6900
Facsimile: (804) 775-6911
wdurrette@durrettebradshaw.com
kfunk@durrettebradshaw.com

*Counsel for Tysinger*

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that, on August 23, 2010, a true copy of the foregoing was served upon the following via overnight delivery and via the Court's ECF system:

Don Bradford Hardin, Jr.
Kevin C. Heffel
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., N.W.
Washington, D.C. 20006

Richard A. Johnston
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109

*Counsel for Chrysler Group*

_/s/ Wyatt B. Durrette, Jr._