**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| TYSINGER MOTOR COMPANY, INC.,<br>d/b/a Tysinger Dodge,<br><br>                    Plaintiff,<br><br>v.<br><br>CHRYSLER GROUP, LLC,<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 3:10-cv-00554-RLW<br>)<br>)<br>)<br>)<br>) |

**TYSINGER MOTOR COMPANY, INC.'S  REPLY MEMORANDUM IN SUPPORT OF
ITS MOTION TO VACATE ARBITRATION AWARD PURSUANT TO 9 U.S.C. § 10**

Tysinger Motor Company, Inc., by counsel, states the following as its reply in support of

its Motion to Vacate Arbitration Award Pursuant to 9 U.S.C. § 10 (the "Motion"):

## I.      Summary

In Chrysler Group LLC's Opposition to Tysinger Motor Company, Inc.'s Motion to

Vacate Arbitration Award and Proposed Order Granting Stay of Arbitration Award (the

"Response"), Chrysler Group, LLC ("Chrysler") argues that the Motion should be denied for

essentially three reasons.  First, Chrysler argues that the Federal Arbitration Act ("FAA") does

not apply and, as a result, its procedures for vacating an arbitration are inapplicable.  Response,

p. 1.  Second, the federal statute at issue, Consolidated Appropriations Act, 2010 Public Law

111-117, § 747 (§ 747), does not provide any means for a court to vacate an award pursuant to it.

Response, p. 1.  Taken together these arguments, if adopted by the Court, mean that Congress

created a remedy whereby the American Arbitration Association ("AAA") was vested with the

authority to make binding adjudications of parties' rights without any recourse to the courts, even where the adjudications were the result of bias, corruption, fraud, or bribery. The Court should not interpret a statute to reach such an inconceivable result. If the Court were to conclude that Congress did intend that adjudications under § 747 are without recourse to any court for any reason whether through § 747 itself or the FAA, as Chrysler urges, § 747 is a violation of Tysinger's due process rights guaranteed by the United States Constitution.

Third, in addition to arguing that this Court has no authority to vacate an adjudication by the AAA under § 747, Chrysler argues that the evidence adduced by Tysinger fails to show any level of bias which warrants vacating the judgment. Response, p. 1. In so arguing, Chrysler asks this court to adopt the rule that, as long as the arbitrator has no direct interest in a party to the arbitration, there can be no improper bias. Response, p. 15. Such a rule ignores the nature of a conflict-of-interest, falls woefully short of preventing "evident partiality", and would allow arbitrators to rule on issues which directly benefit them.

## II.   **Argument**

A.    There is no prohibition in the FAA against applying its procedures and remedies to
      arbitrations arising out of a federal statute.

There is no question that the FAA is an act which requires courts to give effect to arbitration agreements, to enforce such agreements, and, if necessary to vacate awards made pursuant to them. Tysinger does not dispute that effectuating arbitration agreements was the primary policy behind Congress' enactment of the FAA. However, a literal reading of 9 U.S.C. § 10(a) does not limit a court's authority as Chrysler urges:

> **(a)** In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

**(1)** where the award was procured by corruption, fraud, or undue means;
**(2)** where there was evident partiality or corruption in the arbitrators, or either of them;
**(3)** where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
**(4)** where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Although references to agreements to arbitrate are included in many places throughout the FAA, this provision, giving courts the authority to vacate arbitration awards, does not limit itself to arbitrations which arose from agreements. It is also important to note that terms such as award, arbitrations, or arbitrator are not defined in the FAA.

The Response's reference to § 4 of the FAA as well as the cases cited for the proposition that arbitration is a matter of private contract, are taken out of context. Response, pp.10-11. These authorities stand for the unremarkable proposition that parties generally cannot be forced into arbitration and that a court should not compel arbitration where there is no basis for it. These authorities do not contemplate a scenario where Congress mandated arbitration, which substitutes for an agreement to arbitrate. Whether the parties agreed to arbitrate or were compelled to by Congress matters not one wit in determining whether the safeguards to insure a fair hearing before an impartial arbitrator would apply. In a suit to vacate an arbitration required by a congressional mandate, the Court must determine whether 9 U.S.C. § 10(a) may be used to vacate such a ruling. As stated above, a literal reading of § 10(a) does not limit itself to arbitrations arising out of agreements, nor does any rule of statutory construction. Accordingly, the Court may apply § 10(a) to vacate the arbitration ruling made under § 747.

B.    Although within the text of the statute § 747 does not provide a means of vacating an award, such a mechanism must accompany the statute, whether inherently read into it or through the FAA as explained above. Any other result renders § 747 a violation of Tysinger's constitutionally protected due process rights.

Chrysler claims that § 747 "provides this Court with no jurisdiction to vacate a determination by the Section 747 arbitrator". Response, p. 8. In support of this sweeping pronouncement, Chrysler notes the limitations in the scope of § 747 and the expedited time-frame for the completion of the arbitration, concluding that "Congress left no doubt that it was interested in an expeditious and final determination." Response, p. 9. True enough as far as it goes. Chrysler does not explain, however, why the binding and expedited nature deprives Tysinger of its right to seek redress from the courts if the arbitration ruling was the result of bias, fraud, threats of violence, or corruption such as bribery of the arbitrator. Arbitrations are generally binding and are often completed on an expedited basis. These facts have never been interpreted to mean that a party to arbitration has lost its rights to seek redress before a court or that the court has been deprived of its duty to ensure fairness in the arbitral forum.

In arguing that there is no ability for Tysinger to seek redress from a court to ensure fair process, Chrysler ignores that the courts have always viewed Congress' acceptance of arbitration as premised on the neutrality and fairness of the arbitration. Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145, 150 (1968) ("we cannot believe that it was the purpose of Congress to authorize litigants to submit their cases and controversies to arbitration boards that might reasonably be thought biased against one litigant and favorable to another." Id.). Furthermore, Chrysler's position ignores the legislative history behind § 747. Discussing the purpose of the statute, Representative Conyers explained:

> This provision was included because we also believe that by providing a process for working out the relationship between automobile manufacturers and dealerships that ensures transparency and review by a **neutral arbitrator**

>**according to an equitable and balanced standard, taking into account the interests of all affected parties, the property and due process rights of manufacturers and dealerships will be safeguarded.**"

155 Cong. Rec. H14478 (daily ed. Dec. 10, 2009) (statement of Rep. Conyers) (emphasis added). The legislative history from the Senate is equally clear, "The primary intent of this provision is to ensure that covered dealerships have a **fair and impartial review** of the termination decision." 155 Cong. Rec. S13130 (daily ed. Dec. 13, 2009) (statement of Sen. Durbin) (emphasis added).

Chrysler ignores this implicit recognition of fairness and due process in every arbitration as well as the history of this provision. Instead, it cites to cases in which the United States Supreme Court refused to read into statutes provisions which were expressly included in other statutes based on the reasoning that Congress knew how to make such a provision and did not do so; the failure to include is interpreted to be intentional. Response, p. 9, fn. 10. The Supreme Court's logic in the cited cases does not apply here for two reasons. First, in each of the cited cases the court had a comparative statute to look to which illustrated Congress' ability to draft such provisions when it so intended. Here, Chrysler cites to no statute in which Congress has required arbitrations and then provided a mechanism for vacating the rulings. Indeed, it may be impossible to do so as § 747 appears to be unique.

More importantly however, Chrysler's argument, which is a canon of statutory interpretation, cannot be used to override Tysinger's right to redress before a court or to deprive this Court of its authority to ensure fairness in the procedures established by Congress. The most compelling and logical reason why is that since congressional history is replete with references to providing a fair hearing before a "neutral" arbitrator, Congress saw no need to detail in this legislation what was already in the FAA and inherent in the legislation itself. To interpret § 747

as Chrysler contends means that Congress intended to grant a right with no remedy if corruption destroys the right and renders it meaningless. Congress did not intend such a draconian result.

As will be discussed more fully below, the United States Constitution guarantees parties the right to due process, including before an arbitrator. Where possible, statutes should be interpreted to avoid constitutional difficulties. Frisby v. Schultz, 487 U.S. 474, 483 (1988). Accordingly, the Court should interpret § 747 as allowing parties to seek redress before a court in the event the arbitration required under it violated a parties' constitutional right.

In the event the Court were to conclude that § 747 cannot be interpreted to allow a party to seek redress by the court in the event the arbitration ruling was the result of bias, corruption, or some other failure of due process, the Court must then conclude that the statute violates the United States Constitution's protection against the deprivation of property without due process of law as guaranteed by the Fifth Amendment.

When Congress enacted § 747 it created a property interest for Tysinger. Tysinger enjoyed an expectation that, if it met certain criteria prescribed by Congress, an arbitrator would add Tysinger into Chrysler's dealer network. Tysinger's property interest is one that is protected by the Fifth Amendment of the Constitution. In § 747 Congress prescribed a mechanism for exercising that right, specifically arbitration before an arbitrator chosen from the panel of the AAA. When that procedure was perverted as a result of the arbitrator's evident partiality, Tysinger was not able to exercise the right vested by Congress. This failure of a congressionally prescribed procedure deprived Tysinger of its interest without due process of law.

Although Congress prescribed an arbitral forum for exercising rights under § 747, parties exercising those rights are still entitled to due process. That was the question before the Court in Brotherhood of Locomotive Engineers & Trainmen General Committee of Adjustment v. Union

6

Pacific Railroad Co., 522 F.3d 746 (7th Cir. 2008) (aff'd on other grounds, 130 S. Ct. 584 (2009). There, the National Railroad Adjustment Board ("NRAB") acting as an arbitrator dismissed claims before it because there was no evidence of prior attempts to resolve the dispute as required by the Railroad Labor Act. In holding there was no such evidence, the NRAB implemented a new evidentiary rule. In setting aside the arbitrator's ruling, the court held that the new procedures violated the claimant's due process rights which require "the opportunity to be heard at a meaningful time and in a meaningful manner." Id. at 751. Although due process standards are not as stringent in an arbitral forum as in a court, due process still requires that the arbitral forum provide "a fundamentally fair hearing, one that meets the minimal requirements of fairness—adequate notice, a hearing on the evidence and *an impartial decision by the arbitrator*." Id. (emphasis added).

Tysinger believes that Congress did intend for there to be an opportunity for a party to an arbitration under § 747 to seek redress before a court, whether through application of the FAA or through an inherent right arising out of a congressional remedy. However, if the Court were to conclude that no such right exists under § 747, then this statute establishes a procedure for a dealer to reclaim his property rights but no protections to insure that this right is administered fairly and consistent with constitutional standards. Tysinger is unaware of any grant by Congress of a right to a hearing in any forum but no remedy if that right is corrupted.

Chrysler's argument is no appeal – ever. No matter the circumstances. Suppose Chrysler or Tysinger bribed the arbitrator? Or what if the arbitrator owned an interest in Tysinger or Pomoco Hampton? Or had a financial interest directly in Chrysler through one of its LLC members? The circumstances are endless where the arbitration right granted by Congress could

be robbed of any meaning, unless there was a remedy through access to the courts. Yet this is precisely what Chrysler contends.

C.    Tysinger has more than shown the arbitrator's evident partiality.

It is important to note that Chrysler does not deny any of the detailed facts contained in the Affidavit of Mark Tysinger attached to the memorandum filed in support of the Motion.[1]  In that affidavit, Mark Tysinger set forth detailed facts about the connection between the arbitrator and Pomoco Chrysler Jeep of Hampton, Inc. ("Pomoco Hampton"), the entity which will acquire the Dodge franchise from Tysinger. Indeed, Chrysler attempts to minimize the affidavit and simply references it in a footnote. Response, p. 13, fn 12. Further evidence of Chrysler's attempt to misconstrue the affidavit is its attack on certain paragraphs in it as "hypothetical". However, these particular references from the affidavit relate to the *potential for irreparable harm* if a stay is not granted, facts which by their nature are hypothetical. Response, p. 13, fn 12. Chrysler does not, nor could they, attack the facts regarding the arbitrator's financial interest in Cypress Creek LLC ("Cypress Creek"), that this entity is owned by the founder of Pomoco Hampton and a subsidiary of Pomoco Hampton, that the manager of Cypress Creek was a key witness for Chrysler in the arbitration, among others. The arbitrator had to allow over objection the manager of Cypress Creek from which the arbitrator received 11% of the profits to testify favorable to his other employer, Pomoco Hampton, judge his credibility and then decide whether to award him with a clear path to the Dodge franchise by casting aside the competition, Tysinger.

---

[1] Chrysler refers to Tysinger's memorandum as "late-filed" or "untimely" on seven occasions in the Response. Chrysler provides no basis for claiming the memorandum was "untimely" or "late-filed."

Instead of refuting the facts, Chrysler attempts to minimize the relevance of the facts under the standard in ANR Coal Co, Inc. v. Cogentrix of NC, 173 F.3d 493 (4th Cir. 1999). Contrary to Chrysler's claim that Tysinger relied "solely on attorney argument" in meeting the standards (Response, p. 13), Tysigner based its claims on sworn facts. First, Tysinger showed the extensive pecuniary interest of the arbitrator in the proceeding, specifically, the arbitrator's 11% interest in Cypress Creek. Although Chrysler argues that this is not evidence of the arbitrator's interest in the proceeding, it is not difficult to see how Cypress Creek and the arbitrator's minority interest in it is impacted by the ruling, where it is owned by the founder of the primary beneficiary of the ruling and a subsidiary of that beneficiary. It is well accepted that a minority interest is subject to manipulation by majority interests. This is why minority interests are routinely subjected to discounts when sold and why states, including Virginia, enact shareholder oppression statutes. See Virginia Code § 13.1-747. Chrysler does not deny, nor could it, that the decisions as to how much money the arbitrator receives from Cypress Creek are made by persons he benefitted with his rulings. His partiality therefore was flagrantly evident.

Tysinger showed the directness of the relationship between the arbitrator and the party he is alleged to have favored. In attempting to refute this point, Chrysler makes the completely unsupportable statement, "Cypress Creek was not a party to the arbitration between Tysinger and Chrysler. That fact alone is fatal to Tysinger's allegations of bias." Response, p. 15. If adopted, Chrysler's argument would mean that an arbitrator could own any entity which stood to gain from his decision, no matter how significant the gain would be, with no consequence arising from the conflict. Such a rule would place form over substance and would destroy any concept of real neutrality. Chrysler's argument here lacks merit.

9

Similarly, Chrysler's argument, that Tysinger cannot show the connection of that relationship to the arbitration, must fail. Chrysler claims that it and not Pomoco Hampton was the primary beneficiary of the arbitration ruling because Pomoco Hampton was not a party. Response, p. 16. This argument ignores economic reality. The transfer of the Dodge franchise in Hampton, Virginia was one of over 700 franchises nationwide rejected in the multi-billion dollar restructuring that was the Chrysler bankruptcy. Contrast that with the significant benefit to a local automobile dealer which will now be able to carry a new line of cars without competition in the region. The dispute at issue here had a far bigger impact on Pomoco Hampton than it did on Chrysler.

Finally, Chrysler failed to refute the final <u>ANR Coal</u> factor shown by Tysinger, the proximity in time between the relationship and the arbitration. Chrysler alleges that the issue is moot in view of Tysinger's failure to meet the other standards and makes the indefensible argument that the time is not proximate because the arbitrator was assigned his interest before presiding over the arbitration. Response, p. 17. Based on the foregoing, Tysinger has shown that the other factors are present in the case at bar. As a result, the final factor is not moot. As for Chrysler's remaining argument on this point, it is irrelevant when the arbitrator acquired his interest if that interest remains at the time of the hearing.

Simply put, Chrysler has shown the evident partiality of the arbitrator required under the prevailing standard and it has shown that partiality to be direct, definite and capable of demonstration as required under <u>ANR Coal</u>.

D.    The Court may stay enforcement of the arbitration ruling

      Chrysler argues that the Court has no authority to stay enforcement of the award because 1) Chrysler has not moved to enforce it and 2) because Chrysler is free to contract with a non-party, Pomoco Hampton.  While it is true that Chrysler has not filed an action to enforce the award, 9 U.S.C. § 12 does not require such an action to be pending.  Such an interpretation would render a court powerless to maintain the *status quo* in a situation where the arbitration award was self-executing.  As for Chrysler's second argument, it is true that Chrysler had the freedom to contract with Pomoco Hampton before § 747 was enacted.  However, Tysinger's right to seek a fair arbitration under § 747 intervened.  But for the failure of that process, Chrysler would not have the freedom to contract as it once did.  The potential irreparable harm to Tysinger if Chrysler is permitted to contract now, as it claims it had the right to then, warrants this court maintaining the *status quo*.

TYSINGER MOTOR COMPANY, INC.,
d/b/a Tysinger Dodge,


By____Wyatt B.Durrette, Jr._____
                                  Counsel

Wyatt B. Durrette, Jr. (VSB No. 04719)
Kevin J. Funk (VSB No. 65465)
DurretteBradshaw PLC
1111 East Main Street, 16th Floor
Richmond, Virginia 23219
Telephone:      (804) 775-6900
Facsimile:      (804) 775-6911
wdurrette@durrettebradshaw.com
kfunk@durrettebradshaw.com

*Counsel for Tysinger*

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that, on August 25, 2010, a true copy of the foregoing was served upon the following via the Court's ECF system:

Don Bradford Hardin, Jr.
Kevin C. Heffel
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., N.W.
Washington, D.C. 20006

Richard A. Johnston
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109

*Counsel for Chrysler Group*

                    /s/ Wyatt B. Durrette, Jr.