**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

|  |  |  |
|---|---|---|
| TYSINGER MOTOR COMPANY, INC., d/b/a Tysinger Dodge, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 3:10-cv-00554-RLW |
| CHRYSLER GROUP, LLC, | ) ) ) | |
| Defendant. | ) ) | |

**BRIEF IN OPPOSITION TO CHRYSLER GROUP, LLC'S MOTION TO DISMISS**
**MOTION TO VACATE ARBITRATION AWARD**

Tysinger Motor Company, Inc. ("Tysinger"), by counsel, states the following as its

response to Chrysler Group, LLC's ("Chrysler") motion to dismiss pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure (the "Motion to Dismiss"):

## I.    Summary

In its Motion to Dismiss Chrysler argues that Tysinger's motion to vacate the Arbitrator's

determination (the "Motion to Vacate") should be denied for essentially three reasons.  First,

Chrysler argues that the Federal Arbitration Act ("FAA") does not apply and, as a result, its

procedures for vacating an arbitration are inapplicable.  Motion to Dismiss, p. 2.  Due to the

Court's ruling in its Order denying the temporary stay, i.e., that the FAA does not apply to the

arbitration at issue, the applicability of the FAA will not be addressed in this brief.  Tysinger

notes its exception to that ruling.  In addition to the FAA's inapplicability, Chrysler argues that

the federal statute at issue, Consolidated Appropriations Act, 2010 Public Law 111-117, § 747 (§

747), does not provide any means for a court to vacate an award pursuant to it. Motion to Dismiss, p. 2. This argument, if adopted by the Court, means that Congress created a remedy whereby the American Arbitration Association ("AAA") was vested with the sole and unfettered authority to make binding adjudications of parties' rights without any recourse to the courts, even where the adjudications were the result of bias, corruption, fraud, or bribery. The Court should not interpret a statute to reach such an inconceivable result. If the Court were to conclude that Congress did intend that adjudications under § 747 are without recourse to any court for any reason as Chrysler urges, § 747 is a violation of Tysinger's due process rights guaranteed by the United States Constitution.

Finally, in addition to arguing that this Court has no authority to vacate an adjudication by the AAA under § 747, Chrysler argues that the evidence adduced by Tysinger fails to show any level of bias which warrants vacating the judgment. Motion to Dismiss, p. 2. In so arguing, Chrysler asks this Court to adopt the rule that, as long as the arbitrator has no direct interest in a party to the arbitration, there can be no improper bias. Motion to Dismiss, p. 17. Such a rule ignores the nature of a conflict-of-interest, falls woefully short of preventing "evident partiality", ignores any financial relationship between a party and nonparty, and would allow arbitrators to rule on issues which directly benefit them.

## II.   Facts

Tysinger operated a Dodge dealership located at 2712 Magruder Boulevard, Hampton, Virginia 23666 pursuant to a franchise agreement with Chrysler Corporation ("Old Chrysler"). Motion to Vacate, ¶ 6. On April 30, 2009, Old Chrysler filed a petition under Chapter 11 of the Bankruptcy Code. Motion to Vacate, ¶ 7. As a result of its bankruptcy filing, Old Chrysler was

eliminated and a new company emerged—Chrysler. In bankruptcy, Old Chrysler rejected the

dealer agreements of 789 franchisees, including the dealer agreement with Tysinger. Motion to

Vacate, ¶ 8. Subsequent to the termination of Tysinger's franchise, Chrysler entered into a letter

of intent with Pomoco Hampton Chrysler Jeep of Hampton ("Pomoco Hampton") to award it

Tysinger's Dodge Franchise. Motion to Vacate, ¶ 17. Pomoco Hampton is one of several

dealerships owned by Pomoco Group, Inc. ("Pomoco Group"), whose founder is Dois I. Rosser.

Motion to Vacate, ¶ 14.

To address the circumvention of state automobile dealer franchise laws and the

unjustified closing of numerous financially successful dealerships, such as Tysinger, throughout

the country, Congress passed § 747 which allowed dealerships selected for elimination to avail

themselves of a binding arbitral process outlined therein. Motion to Vacate, ¶ 9. Tysinger

availed itself of the aforesaid Act and sought arbitration with AAA to have its dealer agreement

reinstated and to be added to the Chrysler dealer network. Motion to Vacate, ¶ 10.

The arbitration that ensued between Tysinger and Chrysler was styled *Tysinger Motor*

*Company, Inc. v. Chrysler Group, LLC* and was assigned Case No. 33-532-0089-10. The

Arbitrator was selected to preside over the hearing and issue a ruling on Tysinger's request to be

reinstated. Pursuant to the scheduling order of the Arbitrator, the parties were to disclose their

factual and expert witnesses prior to the hearing. Motion to Vacate, ¶ 11.

Chrysler served its factual witness disclosure upon the Arbitrator, Tysinger's attorneys,

and the AAA representative on June 15, 2010. Chrysler disclosed that it might offer, among

others, Steven Adams, Vice President of the Pomoco Group, on behalf of Chrysler. Motion to

Vacate, ¶ 12. Mr. Adams was expected to testify, *inter alia*, and did testify in support of

Chrysler's contention that its best interests were served by eliminating Tysinger's dealership and

gifting it to Pomoco Hampton. Tysinger's objection to Mr. Adams' testimony was overruled by

the Arbitrator. Motion to Vacate, ¶ 18. Mr. Adams was crucial to Chrysler's case and its efforts

to justify giving Tysinger's Dodge franchise (without compensation) to Pomoco Hampton. In

fact, Tysinger has learned that Mr. Adams is the Vice-President of Pomoco Hampton as well as

Pomoco Group. Affidavit of Mark Tysinger ("Tysinger Aff."), Exhibit A to Tysinger's

Memorandum in Support of its Motion to Stay, ¶ 4.[1] Tysinger objected to these witnesses being

allowed to testify. Motion to Vacate, ¶ 12.

On June 22, 2010, the Arbitrator advised the parties that he was familiar with Mr. Adams,

and knew that he was also the project manager for a residential real estate project in Surry

County, Virginia known as "Cypress Creek". Motion to Vacate, ¶ 13. The Arbitrator acquired

this interest from his father-in-law who was hired by the principles of Pomoco Hampton to

perform work on Cypress Creek. He assigned his 11% interest in the profits to the Arbitrator and

his wife. Motion to Vacate, ¶ 15. Mr. Adams, as project manager of Cypress Creek, has

significant influence and/or control over the development and/or sale of the project, including the

ability to influence, *inter alia*, the amount of profits arising from the project, and when those

profits might be realized—again decisions directly affecting the Arbitrator financially.[2] Motion

to Vacate, ¶ 23.

---

[1] Some of the facts in the Affidavit of Mark Tysinger were not pled in the Motion to Vacate because Tysinger learned of them later. To the extent the Court holds that Tysinger has not adequately pled evident partiality of the Arbitrator, the Court should permit Tysinger to file an amended Motion to Vacate.

[2] Chrysler complains that Tysinger does not "know" this because it cites no source. Chrysler thus dismisses this and other Tysinger facts as nothing more than "attorney argument". Chrysler ignores obvious compelling inferences from known facts. As Manager of Cypress Creek, Mr. Adams surely has some degree of "influence and/or control on decisions that affect the amount of distribution of "profits". To turn a blind eye to this fact, is to ignore reality.

Cypress Creek is owned in part by Pomoco Developments, Inc. ("Pomoco Developments"), which is a subsidiary of Pomoco Hampton, and by Dois I. Rosser, the founder of Pomoco Group. Motion to Vacate, ¶ 14. Tysinger has also learned that Mr. Rosser is listed with the Virginia DMV as a licensed sales person for Pomoco Hampton. Tysginer Aff. ¶ 8. The business address for Pomoco Developments, Pomoco Group, and Cypress Creek is the same address as the Pomoco Hampton dealership which will receive Tysinger's Dodge franchise as a result of the Arbitrator's ruling. Steven Adams serves as the registered agent for Cypress Creek, Pomoco Developments and Pomoco Group. Motion to Vacate, ¶ 14. The Arbitrator's interest in the Cypress Creek development was ongoing at the time of the arbitration hearing. Motion to Vacate, ¶ 17.

Chrysler's attorneys acknowledged that the representatives of Pomoco Hampton identified by Chrysler as witnesses, which included Mr. Adams, had a vested interest in the outcome of the arbitration. Yet, Chrysler's attorneys vigorously defended the Arbitrator and insisted that he continue to serve as the Arbitrator for the Tysinger matter. Motion to Vacate, ¶ 17.

The Arbitrator recognized that Chrysler intended to give the Dodge franchise to Pomoco Hampton if Tysinger did not prevail in the arbitration and further ruled, over Tysinger's objection, that the testimony of Mr. Adams was relevant to the arbitration. Despite Tysinger's objection to the service of the aforesaid Arbitrator, AAA reaffirmed his service on June 25, 2010. Motion to Vacate, ¶¶ 24-25.

The arbitration hearing was held in the City of Richmond on June 29 and 30 of 2010. Tysinger again voiced its objection to the service of the Arbitrator. The Arbitrator issued his ruling on July 22, 2010, finding that Tysinger failed to sustain its burden of proof (the Arbitrator

had previously ruled against Tysinger as to which party had the burden of proof) and therefore

denying its request to be added to Chrysler's Dodge dealers network.  The Arbitrator's award

had the effect of awarding Tysinger's Dodge franchise to Pomoco Hampton. Motion to Vacate, ¶

26.


### III.    Motion to Dismiss Standard of Review

In determining whether to grant a motion to dismiss, "the court should assume the

veracity of well-pleaded factual allegations, if there are any, and 'determine whether they

plausibly give rise to an entitlement to relief.'" Jones v. Baugher, 689 F. Supp. 2d 825, 832 n.15

(W.D. Va. 2010) (citing Iqbal v. Ashcroft, 129 S. Ct. 1937, 1950 (2009)).  "Usually, under Rule

12(b)(6), the Court must draw all reasonable inferences in the plaintiff's favor."  In re Pilgrim's

Pride Corp. Secs. Litig., 2010 U.S. Dist. LEXIS 84260, *12 (E.D. Texas Aug. 17, 2010).

Furthermore, courts are to "accept all factual allegations in the complaint as true, drawing all

reasonable inferences in favor of the plaintiff" and when "considering a Rule 12(b)(6) motion,

[the court] may take judicial notice of matters of public record without converting the motion

into one for summary judgment."  Sawyer v. Atlas Heating & Sheet Metal Works, Inc., 2010

U.S. Dist. LEXIS 82196 (E.D. Wisc. Aug. 11, 2010) (citing Henson v. CSC Credit Services, 29

F.3d 280, 284 (7th Cir. 1994)); see also Casella v. Borders, 649 F. Supp. 2d 435, 438 (W.D. Va.

2009) ("all allegations in the complaint taken as true and all reasonable inferences drawn in the

plaintiff's favor" (citing Chao v. Rivendell Woods, Inc., 415 F.3d 342, 346 (4th Cir. 2005)).

## IV.   <u>Argument</u>

A.   Although within the text of the statute § 747 does not provide a means of vacating an award, such a mechanism must inherently accompany the statute.  Any other result <u>renders § 747 a violation of Tysinger's constitutionally protected due process rights.</u>

Chrysler claims that § 747 "provides this Court with no jurisdiction to vacate a determination by the Section 747 arbitrator".  Motion to Dismiss, p. 8.  In support of this sweeping pronouncement, Chrysler notes the limitations in the scope of § 747 and the expedited time-frame for the completion of the arbitration, concluding that "Congress left no doubt that it was interested in an expeditious and final determination."  Motion to Dismiss, p. 10.  True enough as far as it goes.  Chrysler does not explain, however, why the binding and expedited nature deprives Tysinger of its right to seek redress from the courts if the arbitration ruling was distorted by bias, fraud, threats of violence, or corruption such as bribery—no matter how egregious—of the arbitrator.

Arbitrations are generally binding and are often completed on an expedited basis.  These facts have <u>never</u> been interpreted to mean that a party to arbitration has lost its rights to seek redress before a court or that the court has been deprived of its duty to ensure fairness in the arbitral forum.  It would be a stunning reversal of bedrock principles of American justice to allow the deprivation of property rights without the supervision of appellate courts where necessary to prevent "evident partiality" of an arbitrator to influence the outcome of a contested matter.

Similarly, Chrysler's argument, that the Court cannot order a new hearing because the time limits in § 747 have expired, fails.  Motion to Dismiss, ¶ 9, fn 10.  Such an argument is analogous to suggesting an appellate court has no authority to review a trial court because a statute of limitations has expired.  Tysinger timely initiated its rights under § 747.  Tysinger is

simply requesting that it receive what § 747 contemplated should have happened in June – a fair arbitration.

Chrysler contends that, because there is no express provision in § 747 allowing for the intervention by the courts, the courts are powerless to interpret and enforce this statute. Such a contention leaves the door open for Chrysler to simply ignore the statute. What if Chrysler did not like an arbitrator's decision and refused to add a dealer which the arbitrator determined should be added to the network? Who would enforce the arbitrator's decision under Chrysler's contention? Clearly, the courts have the inherent duty to enforce the statute. Similarly, courts have the inherent duty to interpret and enforce the neutrality that is the centerpiece of this legislation.

In arguing that there is no ability for Tysinger to seek redress from a court to ensure fair process, Chrysler ignores that the courts have always viewed Congress' acceptance of arbitration as premised on the neutrality and fairness of the arbitration. Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145, 150 (1968) ("we cannot believe that it was the purpose of Congress to authorize litigants to submit their cases and controversies to arbitration boards that might reasonably be thought biased against one litigant and favorable to another." Id.). The soundness of this insight is as solid today as it was in 1968. Furthermore, Chrysler's position ignores the legislative history behind § 747. Discussing the purpose of the statute, Representative Conyers explained:

> This provision was included because we also believe that by providing a process for working out the relationship between automobile manufacturers and dealerships that ensures transparency and review by a **neutral arbitrator according to an equitable and balanced standard, taking into account the interests of all affected parties, the property and due process rights of manufacturers and dealerships will be safeguarded**."

155 Cong. Rec. H14478 (daily ed. Dec. 10, 2009) (statement of Rep. Conyers) (emphasis added).

The legislative history from the Senate is equally clear, "The primary intent of this provision is to ensure that covered dealerships have a **fair and impartial review** of the termination decision." 155 Cong. Rec. S13130 (daily ed. Dec. 13, 2009) (statement of Sen. Durbin) (emphasis added).

Chrysler ignores this implicit recognition of fairness and due process in every arbitration as well as the history of this provision. Congress obviously understood that no reasonable person would believe that "it was the purpose of Congress to authorize litigants to submit their cases and controversies to arbitration boards that might be reasonably thought biased against one litigant and favorable to another." Commonwealth Coatings Corp., 393 U.S. at 150.

In a strained effort to argue otherwise, Chrysler cites to cases in which the United States Supreme Court refused to read into statutes provisions which were expressly included in other statutes based on the reasoning that Congress knew how to make such a provision and did not do so; the failure to include is interpreted to be intentional. Motion to Dismiss, p. 10, fn. 12. The Supreme Court's logic in the cited cases does not apply here for two reasons. First, in each of the cited cases the court had a comparative statute to look to which illustrated Congress' ability to draft such provisions when it so intended. Here, Chrysler cites to no statute in which Congress has required arbitrations and then provided a mechanism for vacating the rulings. Indeed, it may be impossible to do so as § 747 appears to be unique.

More importantly however, Chrysler's argument, which is a canon of statutory interpretation, cannot be used to override Tysinger's right to redress before a court or to deprive this Court of its authority to ensure fairness in the procedures established by Congress. The most compelling and logical reason why is that since congressional history is replete with references to providing a fair hearing before a "neutral" arbitrator, Congress saw no need to detail in this

legislation what is inherent in the legislation itself.  To interpret § 747 as Chrysler contends means that Congress intended to grant a right with no remedy if corruption destroys the right and renders it meaningless.  Congress did not intend such a draconian result.

As will be discussed more fully below, the United States Constitution guarantees parties the right to due process, including before an arbitrator.  Where possible, statutes should be interpreted to avoid constitutional difficulties.  Frisby v. Schultz, 487 U.S. 474, 483 (1988).  Accordingly, the Court should interpret § 747 as allowing parties to seek redress before a court in the event the arbitration required under it violated a parties' constitutional right.

In the event the Court were to conclude that § 747 cannot be interpreted to allow a party to seek redress by the court in the event the arbitration ruling was the result of bias, corruption, or some other failure of due process, the Court must then conclude that the statute violates the United States Constitution's protection against the deprivation of property without due process of law as guaranteed by the Fifth Amendment.

When Congress enacted § 747 it created a property interest for Tysinger.  Tysinger enjoyed an expectation that, if it met certain criteria prescribed by Congress, an arbitrator would add Tysinger into Chrysler's dealer network.  Tysinger's property interest is one that is protected by the Fifth Amendment of the Constitution.  In § 747 Congress prescribed a mechanism for exercising that right, specifically arbitration before an arbitrator chosen from the panel of the AAA. When that procedure was perverted as a result of the Arbitrator's evident partiality, Tysinger was not able to exercise the right vested by Congress.  This failure of a congressionally prescribed procedure deprived Tysinger of its interest without due process of law.

Although Congress prescribed an arbitral forum for exercising rights under § 747, parties exercising those rights are still entitled to due process.  That was the question before the Court in

Brotherhood of Locomotive Engineers & Trainmen General Committee of Adjustment v. Union
Pacific Railroad Co., 522 F.3d 746 (7th Cir. 2008) (aff'd on other grounds, 130 S. Ct. 584
(2009). There, the National Railroad Adjustment Board ("NRAB") acting as an arbitrator
dismissed claims before it because there was no evidence of prior attempts to resolve the dispute
as required by the Railroad Labor Act. In holding there was no such evidence, the NRAB
implemented a new evidentiary rule. In setting aside the arbitrator's ruling, the court held that
the new procedures violated the claimant's due process rights which require "the opportunity to
be heard at a meaningful time and in a meaningful manner." Id. at 751. Although due process
standards are not as stringent in an arbitral forum as in a court, due process still requires that the
arbitral forum provide "a fundamentally fair hearing, one that meets the minimal requirements of
fairness—adequate notice, a hearing on the evidence and *an impartial decision by the
arbitrator*." Id. (emphasis added).

Tysinger believes that Congress did intend for there to be an opportunity for a party to an
arbitration under § 747 to seek redress before a court, through an inherent right arising out of a
congressional remedy. However, if the Court were to conclude that no such right exists under §
747, then this statute establishes a procedure for a dealer to reclaim his property rights but no
protections to insure that this right is administered fairly and consistent with constitutional
standards. Tysinger is unaware of any grant by Congress of a right to a hearing in any forum but
no remedy if that right is corrupted.

Chrysler's argument is no review by a court – ever. No matter the circumstances.
Suppose Chrysler or Tysinger bribed the arbitrator? Or what if the arbitrator owned an interest
in Tysinger or Pomoco Hampton? Or had a financial interest directly in Chrysler through one of
its LLC members? The circumstances are endless where the arbitration right granted by

11

Congress could be robbed of any meaning, unless there was a remedy through access to the courts. Yet this is precisely what Chrysler contends.

B.     Tysinger has more than shown the Arbitrator's evident partiality.

On a motion pursuant to Rule 12(b)(6), the court should assume the veracity of well-pleaded factual allegations. Jones, 689 F. Supp 2d at 832, fn.15.  In seeking to dismiss the Motion to Vacate on the basis that Chrysler has not pled facts to show the Arbitrator's evident partiality, Chrysler attempts to minimize the clear facts: 1) the Arbitrator's financial interest in Cypress Creek; 2) that this entity is owned by the founder of Pomoco Hampton and a subsidiary of Pomoco Hampton; 3) that Pomoco Hampton is the beneficiary of the Arbitrator's ruling; 3) that the manager of Cypress Creek and Vice-President of Pomoco Group was a key witness for Chrysler in the arbitration, among others facts.  Chrysler asks the Court to ignore the fact that the Arbitrator had to allow over objection the manager of Cypress Creek from which the Arbitrator received 11% of the profits to testify favorable to his other employer, Pomoco Hampton, judge his credibility and then decide whether to award his employer a clear path to the Dodge franchise by casting aside the competition, Tysinger.

In claiming that the clear facts do not meet the requisite showing of evident partiality, Chrysler misapplies the facts to the standard in ANR Coal Co, Inc. v. Cogentrix of NC, 173 F.3d 493 (4th Cir. 1999).  Contrary to Chrysler's claim that Tysinger relied "solely on attorney argument" in meeting the standards (Motion to Dismiss, p. 15), Tysinger based its claims on sworn facts.  First, Tysinger showed the extensive pecuniary interest of the arbitrator in the proceeding, specifically, the arbitrator's 11% interest in Cypress Creek.  Although Chrysler argues that this is not evidence of the arbitrator's interest in the proceeding, it is not difficult to

see how Cypress Creek and the arbitrator's minority interest in it is impacted by the ruling, where it is owned by the founder of the primary beneficiary of the ruling and a subsidiary of that beneficiary.

It is well accepted that a minority interest is subject to manipulation by majority interests. This is why minority interests are routinely subjected to discounts when sold and why states, including Virginia, enact shareholder oppression statutes. See Virginia Code § 13.1-747. Chrysler does not deny, nor could it, that the decisions as to how much money the arbitrator receives from Cypress Creek are made by persons he benefitted with his rulings. His partiality therefore was flagrantly evident. This is economic reality from Economics 101, not attorney argument.

Tysinger showed the directness of the relationship between the Arbitrator and the party he is alleged to have favored. In attempting to refute this point, Chrysler makes the completely unsupportable statement, "Cypress Creek was not a party to the arbitration between Tysinger and Chrysler. That fact alone is fatal to Tysinger's allegations of bias." Motion to Dismiss, p. 17. If adopted, Chrysler's argument would mean that an arbitrator could own any entity which stood to gain from his decision, no matter how significant the gain would be, with no consequence arising from the conflict. Such a rule would place form over substance and would destroy any concept of real neutrality.

Courts have upheld the vacatur of an arbitration award where the arbitrator's connection was not with a party, but with an entity having business connections to a party. See New Regency Productions, Inc. v. Nippon Herald Firms, Inc., 501 F.3d 1101 (9th Cir. 2007). Chrysler cites to ANR Coal Co., Inc. for the proposition that an arbitrator's connection to a non-party should not be the basis for finding evident partiality. There, the strongest evidence

proffered by the party claiming bias was that the arbitrator's firm had represented the sole customer of the opposing party to the arbitration and that if that party had lost the arbitration, that party would then pass the cost of the loss onto its sole customer, the arbitrator's firm's client. The court noted that there was no evidence that the relationship between the opposing party and its sole customer allowed a pass-through of the loss as claimed, or that such a result would have any effect on the relationship between the arbitrator's firm and the customer to whom such costs would be passed.  Under these facts the first three factors in determining evident partiality could not be met.  Id. at 500-02.  Chrysler's argument here lacks merit.

Similarly, Chrysler's argument, that Tysinger cannot show the connection of that relationship to the arbitration, must fail.  Chrysler claims that it and not Pomoco Hampton was the primary beneficiary of the arbitration ruling because Pomoco Hampton was not a party. Motion to Dismiss, p. 18.  This argument again ignores economic reality.  The transfer of the Dodge franchise in Hampton, Virginia was one of over 700 franchises nationwide rejected in the multi-billion dollar restructuring that was the Chrysler bankruptcy.  Contrast that with the significant benefit to a local automobile dealer which will now be able to carry a new line of cars without competition in the region.  The dispute at issue here had a far bigger impact on Pomoco Hampton than it did on Chrysler.

Finally, Chrysler failed to explain away the final ANR Coal factor shown by Tysinger, the proximity in time between the relationship and the arbitration.  Chrysler alleges that the issue is moot in view of Tysinger's failure to meet the other standards and makes the indefensible argument that the time is not proximate because the Arbitrator was assigned his interest before presiding over the arbitration.  Motion to Dismiss, p. 18.  Based on the foregoing, Tysinger has shown that the other factors are present in the case at bar.  As a result, the final factor is not

moot. As for Chrysler's remaining argument on this point, it is irrelevant when the Arbitrator acquired his interest if that interest remains at the time of the hearing.

Simply put, Tysinger properly pled the evident partiality of the Arbitrator required under the prevailing standard and it has shown that partiality to be direct, definite and capable of demonstration as required under ANR Coal.


## V.    **Conclusion**

As set forth above, Tysinger has more than sufficiently pled its claim for vacating the Arbitrator's determination. Consequently, Chrysler has failed to meet its heavy burden to show that Tysinger's Motion to Vacate should be dismissed for failure to state a claim.


TYSINGER MOTOR COMPANY, INC.,
d/b/a Tysinger Dodge,


By____ /s/ Wyatt B. Durrette, Jr._____
                    Counsel

Wyatt B. Durrette, Jr. (VSB No. 04719)
Kevin J. Funk (VSB No. 65465)
DurretteBradshaw PLC
1111 East Main Street, 16th Floor
Richmond, Virginia  23219
Telephone:    (804) 775-6900
Facsimile:    (804) 775-6911
wdurrette@durrettebradshaw.com
kfunk@durrettebradshaw.com

*Counsel for Tysinger*

15

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that, on September 10, 2010, a true copy of the foregoing was served upon the following via the Court's ECF system:

Don Bradford Hardin, Jr.
Kevin C. Heffel
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., N.W.
Washington, D.C. 20006

Richard A. Johnston
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109

*Counsel for Chrysler Group*

_____/s/_ _Wyatt B. Durrette, Jr._____