**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| Tysinger Motor Company, Inc. d/b/a Tysinger Dodge<br><br>      Plaintiff,<br><br>v.<br><br>Chrysler Group, LLC,<br><br>      Defendant. | Civil Action No. 3:10-cv-554-RLW |

**REPLY MEMORANDUM IN SUPPORT OF
<u>CHRYSLER GROUP LLC'S MOTION TO DISMISS</u>**

Conceding that the Federal Arbitration Act ("FAA") under which it brought its Motion to Vacate is inapplicable, Tysinger Motor Company, Inc. ("Tysinger") now advances a new theory in its Opposition ("Opp.") to Chrysler Group LLC's ("Chrysler") Motion to Dismiss that appears nowhere in its original papers, does not cure the manifold procedural and substantive defects in its Motion to Vacate, and is legally incorrect. First, the Opposition ignores the fact that this case is brought, not by a Complaint, but by a Motion to Vacate an arbitration determination pursuant to a federal law that Tysinger now concedes is inapplicable. Second, the Opposition relies upon alleged Due Process claims while ignoring the fact that Tysinger has already, twice, had the opportunity to present its arguments to a neutral body, the American Arbitration Association ("AAA"), entrusted by Congress with authority over arbitrator appointment. Finally, the Opposition fails entirely to point to well-pleaded facts, or even a logical argument, to satisfy its heavy burden of showing that the arbitrator was interested in the outcome of the Chrysler-Tysinger arbitration over a Dodge dealership because of the arbitrator's alleged interest in a real

estate venture. For these reasons, and those set forth in Chrysler's initial Memorandum in Support of its Motion to Dismiss ("Mem."), the Motion to Vacate should be dismissed.

## I. TYSINGER FILED A MOTION TO VACATE, NOT A COMPLAINT

As a preliminary matter, Tysinger has not filed a Complaint, but instead a Motion to Vacate Pursuant to 9 U.S.C. § 10. See Mem. at 1 n. 1; see also Dkt. 1. Accordingly, Chrysler maintains that the Motion to Vacate should be denied, but filed its own Motion to Dismiss in an abundance of caution. Mem. at 8. Instead of clarifying its posture, Tysinger obfuscates the issue relying upon case law setting out a more lenient standard applied to motions to dismiss a complaint.[1] Opp. at 6. For the reasons set forth in Chrysler's Motion to Dismiss—and not denied in Tysinger's Opposition—Tysinger's Motion to Vacate should not be evaluated as a complaint or afforded any such deference, and Tysinger's Motion should be denied for the reasons set forth in Chrysler's Opposition (Dkt. 16).

## II. TYSINGER'S MOTION TO VACATE IS BASED ENTIRELY ON AN ADMITTEDLY INAPPLICABLE STATUTE

Tysinger's Motion to Vacate relied upon the FAA alone. See Motion to Vacate, Dkt. 1, at 2 ("Tysinger commences this action under the FAA"). This Court has already held the FAA to be inapplicable to this Congressionally-mandated arbitration. Order Denying Motion for Stay, Dkt. 25, at 2-3. Tysinger's Opposition concedes, as it must, that this ruling is now the binding law of the case. See Opp. at 1 (specifically noting that Tysinger's Opposition is not contesting the applicability of the FAA); see also U.S. v. Aramony, 166 F. 3d 655, 661 (4th Cir. 1999) ("when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"). Without the FAA, the Motion to Vacate does not,

---

[1] As set forth in Chrysler's initial Memorandum, Tysinger fails to allege facts that meet even the 12(b)(6) standards. See Mem. at 8.

and cannot, identify any basis for vacating the arbitrator's ruling, and should thus be dismissed notwithstanding Tysinger's belated efforts to change its theories.

**III.    SECTION 747 OFFERS TYSINGER PROTECTION AGAINST BIASED ARBITRATORS WITHOUT RECOURSE TO THE FEDERAL COURTS**

Section 747, the only statutory basis for the Chrysler-Tysinger arbitration, does not provide for any judicial review of arbitration determinations made pursuant to the statute. Tysinger now admits this plain reading of the statutory text, conceding that "the text of the statute § 747 does not provide a means of vacating an award[.]" Opp. at 7. Neither of Tysinger's purported explanations for the absence of any such provision saves its case.

First, Tysinger suggests that Congress did not "kn[o]w how to make such a provision" because there is no other statute in which Congress has provided for vacating an arbitration determination. Opp. at 9. This is plainly incorrect, as Congress has provided for such vacatur in the FAA (among other statutes), and its omission in this instance should be interpreted as intentional. See Mem. at 10.

Second, Tysinger argues that the vacatur remedy was somehow so fundamental and "inherent" in the legislation that Congress simply omitted it from the legislation. Opp. at 9-10. This novel interpretation—that Congress would omit provisions reflecting its "primary intent" precisely because those provisions are so important and "inherent" to the legislation (Opp. at 9-10)—is contrary to the "first canon" of statutory construction. See Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-4 (1992) ("[w]e have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there"). Tysinger's references to two sentences from a purported "legislative history" (Opp. at 8-9) make no reference to judicial intervention to determine partiality, and therefore do nothing to support Tysinger's argument, even if reference to legislative history was appropriate in this case.

Cf. Dep't of Hous. and Urban Dev. v. Rucker, 535 U.S. 125, 132 (2002) ("reference to legislative history is inappropriate when the text of the statute is unambiguous").

In the absence of any statutory support for its Motion to Vacate—either in Section 747 or the FAA—Tysinger instead insists that its Due Process rights have somehow been violated because Congress did not go further in providing for judicial vacatur. Opp. at 10. Tysinger's theory is without merit for at least four reasons. First, this alleged deprivation occurred because of the actions of a private entity (the arbitrator), not a state actor. Brzonkala v. Va. Polytechnic Inst. and State Univ., 169 F.3d 820, 862-63 (4th Cir. 1999). Second, the right to seek discretionary arbitration does not constitute a "property interest" subject to protection by the Due Process Clause. See Smith v. Ashcroft, 295 F.3d 425, 429-30 (4th Cir. 2002) ("discretionary statutory 'rights' do not create liberty or property interests protected by the Due Process Clause" absent an "*entitlement* to the benefit" acting to "limit meaningfully the discretion of the decision-makers") (emphasis in original); Love v. Pepersack, 47 F.3d 120, 122-23 (4th Cir. 1995) ("[a]ny significant discretion conferred upon the local agency defeats the claim of a property interest"); Archie v. City of Racine, 847 F.2d 1211, 1217 (7th Cir. 1988) ("if state law establishes procedural entitlements, these are not property and will not be enforced in the name of the Constitution").[2] Tysinger cites no authority to the contrary. Opp. at 10. Third, even if the ability to arbitrate was a property interest, Tysinger's insistence that Congress should have granted additional remedies ignores Congress' broad power to limit "the scope of remedies available under a particular statute," especially where (as here) Tysinger had no such alleged property interest prior to the passage of Section 747. Jett v. Dall. Indep. Sch. Dist., 491 U.S.

---

[2] Tysinger cannot credibly argue that Section 747 strips arbitrators of all discretion, given the statute's reliance upon a non-exclusive list of factors to be considered and an all-encompassing balancing test. See Section 747(d); see also Reece v. Westmoreland Coal Co., 340 F. Supp. 695, 697 (W.D. Va. 1972) ("courts favor a broad discretion in the arbitrator").

701, 732 (1989); see also Atkins v. Parker, 472 U.S. 115, 129 (1985) ("Congress had plenary power to define the scope and the duration of the entitlement . . . and to increase, to decrease, or to terminate those benefits"); Gattis v. Gravett, 806 F.2d 778, 781 (8th Cir. 1986) ("the legislature itself is free to modify or eliminate statutory entitlements").

Finally, and more fundamentally, Tysinger has failed to demonstrate that the absence of judicial vacatur under Section 747 left it without recourse in the event of a biased arbitrator. According to Section 747, a neutral organization—the AAA—was charged with administering the selection of arbitrators. See Section 747(e). Tysinger has never presented any evidence impugning the neutrality of the AAA or AAA's ability to evaluate the arbitrator's neutrality.

Twice, Tysinger presented its arguments about arbitrator bias to the AAA, and twice the AAA concluded that the arbitrator was not biased. Mem. at 10. Due Process does not guarantee Tysinger a third bite at the apple. Univ. of Texas M.D. Anderson Cancer Ctr. v. Sebelius, -- F. Supp. 2d --, 2010 WL 1539820, at *17 (D.D.C. Apr. 19, 2010) (where plaintiff "had a meaningful opportunity to respond" at an administrative hearing, "its due process rights were not violated just because it was not granted another bite at the apple"). Nor does the Due Process Clause require *judicial* review of arbitrator neutrality, where Section 747 provides for the neutral AAA to administer the issue. Washington v. Harper, 494 U.S. 210, 231 (1990) (due process "has never been thought to require that the neutral and detached trier of fact be law trained or a judicial or administrative officer"); Ortwein v. Schwab, 410 U.S. 656, 659-60 (1973) (due process does not require judicial review of agency determinations); Furlong v. Shalala, 238 F.3d 227, 238 (2nd Cir. 2001) ("due process does not require direct judicial review"); Inv. Annuity, Inc. v. Blumenthal, 609 F.2d 1, 7 (D.C. Cir. 1979) ("it is clear that not all denials of access to judicial review amount to due process violations"). Given the availability of AAA review of

neutrality, which Tysinger sought twice to invoke, Tysinger cannot credibly argue that it was left with "no remedy" against the alleged partiality. Opp. at 10.[3]

Tysinger's cited authority does not compel a different conclusion. In Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145 (1968), Congress had clearly provided for vacatur—both parties agreed that the FAA applied in that case—and the only question was the scope of the FAA's vacatur provision. Id. at 147. As Justice White made clear in his concurring opinion, outside of that circumstance where Congress has clearly provided for judicial review, "[t]he judiciary should minimize its role in arbitration as judge of the arbitrator's impartiality." Id. at 151 (White, J., concurring).[4] Similarly, in Brotherhood of Locomotive Engineers & Trainmen General Committee of Adjustment v. Union Pacific Railroad Co., 522 F.3d 746 (7th Cir. 2008), the Railway Labor Act specifically provided for judicial review of National Railroad Adjustment Board determinations. Id. at 749; see also 45 U.S.C. § 143(First)(q) (an aggrieved employee "may file in any United States district court . . . a petition for review of the division's order"). Accordingly, Tysinger's argument that Section 747 has

---

[3] Most of Tysinger's argument boils down to a parade of hypothetical horribles, neither present in this case nor ripe for adjudication by this Court. See Opp. at 8 ("What if Chrysler did not like an arbitrator's decision and refused to add a dealer[?]); Opp. at 11 ("Suppose Chrysler or Tysinger bribed the arbitrator? Or what if the arbitrator owned an interest in Tysinger or Pomoco Hampton? Or had a financial interest directly in Chrysler through one of its LLC members?"). None of these facts are present here, where Tysinger had a fair, two-day hearing before a neutral arbitrator. In any event, this Court lacks jurisdiction to resolve such hypothetical questions. Arc of VA, Inc. v. Kaine, No. 3:09-CV-686, 2009 WL 4884533, at *5 (E.D. Va. Dec. 17, 2009) (Article III imposes "a prohibition on the issuance of advisory opinions [or] decisions based on hypothetical facts").

[4] The arbitrator in Commonwealth Coatings had also hidden the conflict from the party seeking vacatur until after the decision was rendered. Id. at 146. By contrast, the arbitrator in the Chrysler-Tysinger arbitration disclosed his interest in Cypress Creek as soon as the involvement of Pomoco Hampton was made clear. Opp. at 4.

some implicit provision authorizing the federal courts to vacate Section 747 arbitration determinations is baseless.[5]

## IV. TYSINGER HAS STILL FAILED TO ESTABLISH ANY DISQUALIFYING PARTIALITY

Even if this Court had authority to review Section 747 arbitrator neutrality, despite the absence of any legislative basis for such authority, Tysinger has failed to plead sufficient facts to satisfy its "heavy" and "onerous" burden. ANR Coal Co., Inc. v. Cogentrix N.C., Inc., 173 F.3d 493, 501 (4th Cir. 1999). Chrysler has already set forth the deficiencies in Tysinger's pleadings, several of which were not refuted by Tysinger's Opposition (e.g., the fact that Pomoco Hampton was not assured of receiving Tysinger's former Dodge franchise or the absence of any evidence that the arbitrator's interest in Cypress Creek could, in any respect, vary at the discretion of unidentified "Pomoco Principals"), and accordingly Chrysler will not restate them here. See Mem. at 13-19. However, Tysinger's Opposition highlights one additional fatal omission—even crediting all of Tysinger's conclusory allegations, Tysinger has failed to plead any facts showing

---

[5] Section 747 further prohibits the relief sought by Tysinger for another reason—namely, that Section 747's authority to compel arbitrations has expired. Mem. at 9, n. 10. Tysinger's Opposition responds only with an inapt analogy to an appeal filed after a statute of limitations has run. Opp. at 7-8. Obviously, a statute of limitations sets a time window within which an action must ***begin***, Section 747 set a time window within which an arbitration must ***finish***. Section 747(d) ("[t]he arbitration process ***must . . . conclude*** with the case being submitted to the arbitrator for deliberation within 180 days of the date of enactment of this Act") (emphasis added).

that the sale of Dodge vehicles at Pomoco Hampton, a new car dealership, will in any way affect the returns on Cypress Creek, a real estate development.[6]

Instead of relying upon factual allegations about the alleged interest in Cypress Creek, Tysinger relies upon conjecture. Opp. at 13. At best, Tysinger speculates that the arbitrator's purported 11% interest could somehow be "subject to manipulation," with no evidence of what "manipulation" Tysinger is imagining, or that such "manipulation" was threatened, likely, or even possible given the arrangement between the arbitrator and Cypress Creek. Opp. at 13. In any event, all of these allegations concern only an alleged interest in Cypress Creek, not Pomoco Hampton or Pomoco Group. This is not, therefore, a situation where the arbitrator had a pecuniary interest "in the proceeding" (Opp. at 12) or where the arbitrator "own[ed] any entity which stood to gain from his decision" (Opp. at 13). See also Opp. at 12 (alleging "the Arbitrator's financial interest in Cypress Creek" and "that Pomoco [Auto Group] is the beneficiary of the Arbitrator's ruling"). There is nothing—and certainly no pleaded facts—in Tysinger's Motion to Vacate or its Opposition to show that the arbitrator's interest in a residential real estate development would, in any way, be affected by the outcome of the arbitration. This falls well short of the requirement to plead "facts that objectively demonstrate

---

[6] As Tysinger now admits, even those few facts that it does rely upon are largely not pled in its Motion to Vacate. See Opp. at 4, n. 1 ("facts in the Affidavit of Mark Tysinger were not pled in the Motion to Vacate"); n. 2 (relying on "inferences from known facts" in lieu of pleaded facts). In any event, many of these "facts" provide little more than a recitation of Mr. Tysinger's beliefs about the arbitrator, Pomoco Hampton, Chrysler's plans, what might influence a hypothetical arbitrator, or what a hypothetical arbitrator would likely allow. See Affidavit of Mark Tysinger [Docket No. 7-1] at ¶ 12 (" I learned of information which leads me to believe…"); ¶ 13 ("At a new arbitration the arbitrator may be influenced by Chrysler Group's anticipated argument…"); ¶ 13 ("the new arbitrator would likely not allow…"); ¶ 14 ("customers may begin associating Pomoco Hampton with the location for purchasing Dodge vehicles…"). These are not matters of which Mr. Tysinger has personal knowledge or about which Mr. Tysinger is qualified to attest.

such a degree of partiality" as to overcome the "heavy" and "onerous" burden of proving "evident partiality."  ANR Coal, 173 F.3d at 501.[7]

## V.  CONCLUSION

For the foregoing reason, as well as those set forth in Chrysler's initial Memorandum in Support of its Motion to Dismiss, Tysinger's Motion to Vacate Pursuant to 9 U.S.C. § 10 should be dismissed.

---

[7]  Tysinger's citation to New Regency Productions, Inc. v. Nippon Herald Firms, Inc., 501 F.3d 1101 (9th Cir. 2007) changes nothing.  In that case, the Ninth Circuit—which did not apply ANR Coal's four factor test—affirmed vacatur where the arbitrator worked as a senior executive for a firm that was negotiating to finance and produce a major motion picture with a party to the arbitration.  See New Regency, 501 F.3d at 1107.  Here, by contrast, Tysinger has not even alleged any relationship between the arbitrator and a party to the arbitration and certainly not the direct relationship described in New Regency.

| | |
|---|---|
| Dated: September 16, 2010 | CHRYSLER GROUP LLC |
| | By its attorneys, |
| | /s/_____ |
| | Don Bradford Hardin, Jr. (Va. Bar No. 76812)* |
| | Kevin C. Heffel (admitted *pro hac vice*) |
| | WILMER CUTLER PICKERING HALE AND DORR LLP |
| | 1875 Pennsylvania Avenue, N.W. |
| | Washington, D.C. 20006 |
| | Tel: (202) 663-6000 |
| | Fax: (202) 663-6363 |
| | Bradford.hardin@wilmerhale.com |
| | Kevin.heffel@wilmerhale.com |
| | *Admitted in Virginia only. Supervised by members of the District of Columbia bar. |
| | |
| | Robert D. Cultice (*pro hac vice*) |
| | Richard A. Johnston (*pro hac vice*) |
| | WILMER CUTLER PICKERING HALE AND DORR LLP |
| | 60 State Street |
| | Boston, Massachusetts 02109 |
| | Tel: (617) 526-6021 |
| | Fax: (617) 526-5000 |
| | Richard.johnston@wilmerhale.com |

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on this 16th day of September 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to the following counsel of record:

Christine A. Williams
Wyatt B. Durrette, Jr.
DurretteBradshaw PLC
600 E Main St
20th Floor
Richmond, VA 23219
(804) 775-6900
cwilliams@durrettebradshaw.com
wdurrette@durrettebradshaw.com

Kevin Jermone Funk
Cantor Arkema PC
1111 E Main St
PO Box 561
Richmond, VA 23218-0561
(804) 644-1400
kfunk@durrettebradshaw.com

/s/
Don Bradford Hardin, Jr. (Va. Bar No. 76812)*
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel: (202) 663-6000
Fax: (202) 663-6363
Bradford.hardin@wilmerhale.com
*Admitted in Virginia only. Supervised by members of the District of Columbia bar.