IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TYSINGER MOTOR COMPANY, INC.,
d/b/a Tysinger Dodge,

                                              Plaintiff,        Civil Action No. 3:10CV554

        v.

CHRYSLER GROUP, LLC,

                                              Defendant.

## MEMORANDUM OPINION

This matter is before the Court on the Plaintiff's motion to vacate arbitration award pursuant to 9 U.S.C. § 10 (Docket Nos. 1 & 8) and the Defendant's motion to dismiss (Docket No. 23) the Plaintiff's motion to vacate arbitration award. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials presently before the Court, and argument would not aid in the decisional process.

The Plaintiff, Tysinger Motor Company, Inc., d/b/a Tysinger Dodge ("the Plaintiff" or "Tysinger"), is an automotive dealership in Hampton, Virginia that, until 2009, sold Dodge brand vehicles pursuant to a sales and service franchise agreement with Chrysler, LLC ("Old Chrysler").[1] In connection with Old Chrysler's much publicized bankruptcy, the Plaintiff was one of approximately 800 dealers whose franchise agreement was rejected by Old Chrysler's successor

---

[1] The Court notes again for the sake of clarity that the Plaintiff identifies the entity referred to herein as "Old Chrysler" as the "Chrysler Corporation," not "Chrysler, LLC," as so identified by the Defendant. This discrepancy is, however, insignificant, as both parties have, at various times, referred to the same entity in abbreviated form as "Old Chrysler," and there is no question as to which entity the parties refer.

entity, Defendant Chrysler Group, LLC ("New Chrysler" or "the Defendant"). Congress, as part of the Consolidated Appropriations Act of 2010, created a singular remedy for rejected dealerships in Public Law 111-117 § 747 ("section 747" or "§ 747"). The remedy allowed former franchisees to seek review of their rejection before an American Arbitration Association ("AAA") arbitrator in binding arbitration. Pursuant to § 747, the selected AAA arbitrator determined, considering seven enumerated factors, whether the rejected dealer should be added to the relevant manufacturer's dealership network. In addition to its motion to vacate arbitration award, the Plaintiff requested that the Court stay, pending the outcome of this proceeding, the arbitration ruling of Roderick Mathews ("Mathews" or "the Arbitrator"), the AAA arbitrator, in which Mathews found that the Plaintiff was not entitled to be added to New Chrysler's dealership network. By Memorandum Order issued on September 1, 2010, the Court (1) found that it had subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1331 and (2) denied the Plaintiff's motion to stay. Now before the Court is the Plaintiff's motion to vacate arbitration award pursuant to 9 U.S.C. § 10 and the Defendant's motion to dismiss the Plaintiff's motion to vacate arbitration award.

## I. FACTUAL BACKGROUND

In addition to the facts noted above, the Plaintiff's allegations[2] in its motion to vacate include the following: Subsequent to the termination of the Plaintiff's franchise, the Defendant entered into a letter of intent with Pomoco Hampton Chrysler Jeep of Hampton ("Pomoco Hampton") to award it the Dodge franchise that had been the Plaintiff's franchise. Mo. to Vacate,

---

[2] The Defendant notes in its memorandum in support of its motion to dismiss that the truth of all well-pleaded factual allegations must be assumed for purposes of the motion to dismiss but states that it does not admit these allegations. (Docket No. 24).

¶ 17. Pomoco Hampton is owned by Pomoco Group, Inc., whose founder is Dois I. Rosser. *Id.*, ¶ 14. During the arbitration proceedings, the parties disclosed their fact and expert witnesses. *Id.*, ¶ 11. The Defendant served its fact witness disclosure on Mathews, Tysinger's attorneys, and the AAA representative on June 15, 2010, disclosing that it might offer, among others, Steven Adams, Vice President of the Pomoco Group, and Tysinger objected to the named witnesses being allowed to testify. *Id.*, ¶ 12. During the proceedings, on June 29 and 30, 2010, Adams testified in support of New Chrysler's contention that its best interests were served by eliminating Tysinger's dealership and giving it to Pomoco Hampton. *Id.*, ¶¶ 18 & 26. Tysinger's objection to Adams' testimony was overruled by Mathews. *Id.*, ¶ 18.

Previously, on June 22, 2010, Mathews had advised the parties that he was familiar with Adams and knew that he was the project manager for a residential real estate project in Surry County, Virginia known as "Cypress Creek." *Id.*, ¶ 13. Mathews advised that he had acquired an interest in profits from Cypress Creek from his father-in-law who was hired by principles of Pomoco Hampton to perform work on Cypress Creek. *Id.*, ¶ 15. Cypress Creek is owned in part by Pomoco Developments, a subsidiary of Pomoco Hampton, and the business address for Pomoco Developments, Cypress Creek, and Pomoco Group is the same as the address for the Pomoco Hampton dealership. *Id.*, ¶ 14. Adams is the registered agent for Cypress Creek, Pomoco Developments, and Pomoco Group. Rosser, the chairman of the Pomoco Group, owns 99% of Cypress Creek. *Id.* Pomoco Group is a holding company that owns the five Pomoco dealerships. *Id.* Adams has the ability to influence the profits from Cypress Creek, which could directly affect Mathews. *Id.*, ¶ 23. The Defendant's attorneys acknowledged that "each of the four representatives of Pomoco Group has a vested interest" in the outcome, yet they vigorously

defendant Mathews as the Arbitrator and insisted that he continue to serve as the Arbitrator. *Id.*, ¶ 17. The primary beneficiary of the Arbitrator's ruling in favor of New Chrysler is Pomoco Hampton. *Id.*, ¶ 19. Pomoco Group and Adams also benefited. *Id.*, ¶¶ 20 & 21. The Pomoco principals can influence when and if Cypress Creek realizes profits which affects the Arbitrator financially. *Id.*, ¶¶ 22 & 23. Despite Tysinger's objections to the service of Mathews as Arbitrator, the AAA reaffirmed his service on June 25, 2010. *Id.*, ¶ 25. The arbitration was held on June 29 and 30, 2010 in Richmond, and Tysinger again voiced its objection to the Arbitrator. *Id.*, ¶ 26. On July 22, 2010, the Arbitrator found that Tysinger failed to sustain its burden of proof and denied Tysinger's request to be added to New Chrysler's Dodge dealers network. *Id.*, ¶ 26.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a pleading must "permit the court to infer more than the mere possibility of misconduct" by alleging "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. ----, ----, 129 S. Ct. 1937, 1949-50 (2009)). A pleading "must contain more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The parties appear to disagree regarding the standard of review, primarily because Tysinger filed a motion to vacate rather than a complaint. The Defendant argues that Tysinger's motion to vacate should not be evaluated as a complaint or afforded any such deference and that Tysinger's motion to vacate should be denied for the reasons set forth in the Defendant's opposition to the motion to vacate (Docket No. 16). Tysinger sets forth in its response brief in

opposition (Docket No. 26) to the Defendant's motion to dismiss the usual standard of review – including that "the court should assume the veracity of well-pleaded factual allegations" and "draw all reasonable inferences in the plaintiff's favor." *See* Pl.'s Response Br. at 6. Even if the motion to vacate is evaluated as a complaint, for the reasons explained herein, the Plaintiff's motion to vacate must be denied.

### III. DISCUSSION

The Plaintiff's motion to vacate seeks to vacate the underlying arbitration award pursuant to provisions of the Federal Arbitration Act ("FAA"). Tysinger argues in its motion to vacate that "[u]nder the Federal Arbitration Act, this Court may make an order vacating an arbitration award 'where there was evident partiality or corruption in the arbitrators, or either of them,'" citing 9 U.S.C. § 10(a)(2). By Memorandum Order issued on September 1, 2010, the Court held that the FAA does not apply to the arbitration proceedings at issue in this case that took place pursuant to § 747. This ruling is the binding law of the case and, while Tysinger "notes its exception to that ruling," Tysinger is no longer contesting the FAA's applicability. *See* Pl.'s Response Br. at 1. Thus, the motion to vacate is based on an inapplicable statute.

Next, section 747 does not provide for any judicial review of arbitration determinations made pursuant to that statute. Tysinger appears to admit this, conceding that "the text of the statute § 747 does not provide a means of vacating an award[.]" Pl.'s Response Br. at 7. Section 747 was very limited in scope. It allowed former franchisees to seek review of their rejection as a Chrysler franchisee before an AAA arbitrator in binding arbitration. It granted such former franchisees the right to seek to be added as a franchisee to the New Chrysler dealer network in the geographical area where it was located when its franchise was rejected. Relief was limited to a letter of intent to enter into a sales and service agreement, subject to certain other conditions and

5

the rights of other dealers under various state dealer laws. Other relief, including damages, was prohibited. The statute's authority for such arbitrations was quite short-lived – 180 days, plus a 30-day extension for good cause, from its enactment, and section 747 is no longer in effect. *See* section 747(d). The procedure and relief were carefully crafted to provide for a prompt and final decision as to each rejected dealership so that all parties could move forward quickly. Congress did not provide in section 747 any authority under which a party can appeal, move to vacate, or move to stay the arbitrator's determination, although it certainly could have done so. Where Congress does not provide relief that it clearly knows how to provide, it is understood to have deliberately chosen not to provide that relief. *See Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 485 (1996) ("Congress . . . demonstrated in CERCLA that it knew how to provide for the recovery of cleanup costs, and . . . the language used to define the remedies under RCRA does not provide that remedy."). Thus, the Court has no authority to review the arbitration determination made pursuant to section 747 in this case.

Next, even if the Court had the authority to review the determination and the FAA was found to apply in this case, Tysinger has not met the burden of proving Mathews' "evident partiality." A party seeking to vacate an arbitration award "must put forward facts that *objectively* demonstrate such a degree of partiality that a reasonable person could assume that the arbitrator had improper motives." *ANR Coal Co., Inc. v. Cogentrix of N.C., Inc.*, 173 F.3d 493, 501 (4th Cir. 1999). The court "should determine whether the asserted bias is 'direct, definite and capable of demonstration rather than remote, uncertain or speculative' and whether the facts are sufficient to indicate 'improper motives on the part of the arbitrator.'" *Id.* at 500 (internal citations omitted). "The movant carries a 'heavy' burden in order to meet this 'onerous' standard." *Id.* at 501 (internal citations omitted). *See also People's Sec. Life. Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d

141, 146 (4th Cir. 1993) ("It is well established that a mere appearance of bias is insufficient to demonstrate evident partiality.").

According to the Fourth Circuit in *ANR Coal*, there are four factors a court should examine to determine whether a claimant has demonstrated evident partiality. They are:

> (1) the extent and character of the personal interest, pecuniary or otherwise, of the arbitrator in the proceeding; (2) the directness of the relationship between the arbitrator and the party he is alleged to favor; (3) the connection of that relationship to the arbitration; and (4) the proximity in time between the relationship and the arbitration proceeding.

173 F.3d at 500. Despite Tysinger's allegations and supporting affidavits, Tysinger cannot demonstrate evident partiality. As to the first factor, Mathews has no personal interest in the proceeding. Mathews' interest in a percentage of profits of Cypress Creek is at most an indirect connection to Pomoco. There is nothing to demonstrate that the arbitrator's interest in Cypress Creek would be affected by the outcome of the arbitration. Regarding the second factor, "the directness of the relationship between the arbitrator and the party he is alleged to favor," Mathews has no relationship with New Chrysler, the party he is alleged to favor. The relationship is non-existent. The third factor addresses "the connection of that relationship [the arbitrator and New Chrysler] to the arbitration." Since that relationship is non-existent, there can be no connection between a non-existent relationship and the arbitration. The fourth factor is "the proximity in time between the relationship and the arbitration proceeding." Again, since there is no relationship, this factor is irrelevant. Tysinger's argument is based on Mathews' relationship to Pomoco, a non-party. Even this relationship is attenuated, based on Mathews having been assigned, along with his wife, an interest in a percentage of the profits of Cypress Creek, a real estate development that is partly owned by a subsidiary of Pomoco Hampton, the dealership that would be granted a letter of intent by Chrysler to obtain a Dodge sales and service, thus making

Pomoco Hampton the primary beneficiary of the Arbitrator's ruling in favor of New Chrysler. This relationship is too indirect to demonstrate evident partiality. Thus, even if the FAA applied, Tysinger has not "objectively demonstrate[d] such a degree of partiality that a reasonable person could assume that the arbitrator had improper motives." 173 F.3d at 501.

Tysinger's argument that there must be a means of vacating an arbitration award because "[a]ny other result renders section 747 a violation of Tysinger's constitutionally protected due process rights" is without merit. First, section 747 charges a neutral entity – the AAA – with administering the selection of arbitrators. *See* Section 747(c). Twice Tysinger presented its arguments about arbitrator bias to the AAA, and twice the AAA determined that the Arbitrator was not biased. Due process does not require that Tysinger have another "bite at the apple." *See Univ. of Texas M.D. Anderson Cancer Ctr. v. Sebelius*, 706 F. Supp.2d 97, 115 (D.D.C. 2010) (where the plaintiff "had a meaningful opportunity to respond" at an administrative hearing, "its due process rights were not violated just because it was not granted another bite at the apple."). A judicial review of arbitrator neutrality is not required. *See Washington v. Harper*, 494 U.S. 210, 231 (1990) (due process "has never been thought to require that the neutral and detached trier of fact be law trained or a judicial or administrative officer"); *Furlong v. Shalala*, 238 F.3d 227, 238 (2nd Cir. 2001) ("due process does not require direct judicial review"). Further, unless Congress has clearly provided for judicial review, "[t]he judiciary should minimize its role in arbitration as judge of the arbitrator's impartiality." *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 151 (1968) (White, J., concurring). Tysinger's due process arguments are also without merit because (1) the alleged deprivation was based on the actions of an arbitrator who was not a state actor, *Brzonkala v. Va. Polytechnic Inst. & State Univ.,* 169 F.3d 820, 862-63 (4th Cir. 1999); (2) the right to seek discretionary arbitration does not constitute a "property interest" subject to due

process protection, *Smith v. Ashcroft*, 295 F.3d 425, 429-30 (4th Cir. 2002); and (3) Congress has the power to limit "the scope of the remedies available under a particular statute," *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 732 (1989), and "when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies," *id.* (quoting *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974)).

Finding that the Court has no authority to review the arbitration determination made pursuant to section 747 in this case, the Plaintiff's motion to vacate arbitration award pursuant to 9 U.S.C. § 10 (Docket Nos. 1 & 8) will be denied. The Defendant's motion to dismiss (Docket No. 23) will be terminated as moot.

An appropriate Final Order shall issue.

January 7, 2011  /s/
DATE  RICHARD L. WILLIAMS
SENIOR UNITED STATES DISTRICT JUDGE